Robert S. CALVERT et al., Appellants,

v.

GENERAL RETAIL CORPORATION, Appellee.

No. 11286.

Court of Civil Appeals of Texas.

Austin.

April 14, 1965.

Rehearing Denied May 5, 1965.

Waggoner Carr, Atty. Gen., H. Grady Chandler, Gordon C. Cass, Asst. Atty. Gen., Austin, for appellants.

Clark, Thomas, Harris, Denius & Winters, Sander W. Shapiro, Roderick Edens, Jr., Austin, for appellee.

ARCHER, Chief Justice.

This is an appeal from a judgment of the District Court ordering the refund to appellee of $7,434.00 paid under protest for a tax assessed under the Texas Chain Store Tax Act (Art. 17.01 et seq., Title 122A, V. A.C.S.).

There were stipulations as to facts, and testimony was given by appellants.

The court made findings of fact and conclusions of law.

On trial before the court judgment was based on the holding that the shoe departments were not "stores" separate from the department stores operated by Dunlap.

The appeal is founded on ten points assigned as error by the trial court and are to the effect that the court erred in concluding that the shoe departments are not stores within the meaning of Article 17.01 et seq.; in holding the plaintiff is not liable for the tax on the 9 locations; in concluding that plaintiff does not operate stores in the Dunlap stores; in concluding that plaintiff does not own or control the shoe departments, and is not the person required to pay the tax; in concluding that the shoe departments are operated and controlled by Dunlap; that Dunlap had paid the full tax; in finding that each of the shoe departments is not a separate business from that of Dunlap's, and finally in not rendering judgment that plaintiff take nothing.

Appellee is engaged primarily in the business of selling shoes. It sells shoes through its own retail outlets, through departments operated by it, under a lease agreement, in other retail stores, and by consignment to other retail stores.

Appellee has heretofore entered into a Lease agreement with Dunlap, a firm operating a full line department store, covering 9 locations in 9 different Dunlap stores, for space in said stores for the purpose of operating a shoe department therein for the sale of shoes at retail. The lease agreement is on a Landlord-Tenant basis. Appellee stocks the department with its own merchandise, hires the salesmen to operate said department, who sell the merchandise, and who serve as employees of appellee and are paid by appellee. In consideration for the space leased by appellee and other services, the Lessor receives a percentage of the sales of said shoe department.

The statutes covering the operation of Chain Stores are:

Article 17.01, Title 122A.

"From and after the passage of this Chapter it shall be unlawful for any person, agent, receiver, trustee, firm, corporation, association or copartnership, either foreign or domestic to operate, maintain, open or establish any store or mercantile establishment in this State without first having obtained a license so to do from the Comptroller of Public Accounts as hereinafter provided. Acts 1959, 56th Leg. 3rd C.S. p. 187, ch. 1."

Article 17.02.

"(a) Any person, agent, receiver, trustee, firm, corporation, association or copartnership desiring to operate, maintain, open or establish a store or mercantile establishment in this State shall apply to the Comptroller of Public Accounts for a license so to do. The application for a license shall be made on a form which shall be prescribed and furnished by the Comptroller of Public Accounts and shall set forth the name of the owner, manager, trustee, lessee, receiver, or other person desiring such license, the name of such store or mercantile establishment, the location, including the street number of such store, or mercantile establishment, and such other facts and information as the Comptroller of Public Accounts may require. If the appli-

cant desires to operate, maintain, open or establish more than one such store or mercantile establishment, such applicant shall make application for a license to operate, maintain, open or establish each such store or mercantile establishment, but the respective stores or mercantile establishments for which the applicant desires to secure licenses may all be listed on one application blank.

"(b) It is hereby made the further duty of the Comptroller to collect, supservice, and enforce the collection of all license and application fees that may be due under the provisions of this Chapter and to that end the said Comptroller is hereby vested with all of the power and authority conferred by this Chapter. The Comptroller is further authorized and empowered to promulgate rules and regulations to provide for the collection of the amount of license and application fees due under the provisions of this Chapter and on the effective date of this Chapter.

"The Comptroller is hereby directed to determine the true ownership of any store or stores or establishments or departments, regardless of the name or operating name and collect the tax levied herein accordingly. * * *"

Article 17.05.

"(a) * * * Exemptions—not pertinent to this cause.

"(b) The license fees herein prescribed shall be as follows:

"1. Upon one (1) store the license fee shall be Four Dollars ($4);

"2. Upon each additional store in excess of one (1), but not to exceed two (2), the license fee shall be Nine Dollars ($9);

"3. Upon each additional store in excess of two (2), but not to exceed five (5), the license fee shall be Twenty-seven Dollars and Fifty Cents ($27.-50);

"4. Upon each additional store in excess of five (5), but not to exceed ten (10), the license fee shall be Fifty-five Dollars ($55);

"5. Upon each additional store in excess of ten (10), but not to. exceed twenty (20), the license fee shall be One Hundred and Sixty-five Dollars ($165);

"6. Upon each additional store in excess of twenty (20), but not to exceed thirty-five (35), the license fee shall be Two Hundred and Seventy-five Dollars ($275);

"7. Upon each additional store in excess of thirty-five (35), but not to exceed fifty (50), the license fee shall be Five Hundred and Fifty Dollars ($550);

"8. Upon each additional store in excess of fifty (50), the license fee shall be Eight Hundred and Twenty-five Dollars ($825). * * *"

Article 17.07.

"The term 'store' as used in this Chapter shall be construed to mean and include any store or stores or any mercantile establishment or establishments not specifically exempted within this Chapter which are owned, operated, maintained, or controlled by the same person, agent, receiver, trustee, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold at retail or wholesale. Acts 1959, 56th Leg. 3rd C.S. p. 187, ch. 1."

The parties made stipulations which are long and we will not copy such in whole but will refer to and copy such parts as appear necessary to determination of the issues.

General Retail Corporation, appellee herein, and Dunlap Company, a corporation entered into a Lease Agreement in 1959 to expire December 31, 1964 to lease spaces for shoe departments in eight department stores in Texas, with the right on the part of Lessor to change the locations, and to close a store without reopening a new store, the Lessee to use the space for the purpose of selling at retail shoes and related accessory items, and is granted the exclusive right to do so.

The lease was to evidence the relationship of landlord and tenant, and in no way a partnership, but to be and remain the business of the Lessee, but shall appear to customers to be a department of Lessor's business, and all displays in show windows shall conform to Lessor's requirements. The employees of Lessee shall conform to storewide rules, and shall be discharged at Lessor's exclusive option.

Any controversy with any customer of Lessee shall be referred to Lessor for settlement. All receipts through sale of merchandise by Lessee shall be paid to Lessor, who shall make true accounting, and pay out of such account at the order of Lessee all proper expenses.

The Lessor was not to be accountable for making any reports as required by the Social Security Act, or Income Tax Act.

Lessor was to receive for the use of the premises and services rendered 14% of the net sale from all Class A Departments, and 12% from all Class B Departments, and the amount of rent shall be computed monthly and deducted from funds belonging to Lessee in Lessor's hands.

Provision is made for credit sales, or checks accepted as approved by Lessor, and that the title to all merchandise purchased by Lessee shall remain in Lessee until disposed of by it.

■ We believe that the shoe departments of appellees located in the Dunlap Stores are stores or mercantile establishments within the meaning of Article 17.01 et seq., supra, and that appellees are liable for the tax.

In Hurt v. Cooper, 130 Tex. 433, 110 S.W. 2d 896, the Court stated that "The test is whether sales of goods, wares, or merchandise are made at the place."

In Fox v. Standard Oil Company of New Jersey, 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780, the Court defined the term store.

The appellee purchases its merchandise, hires its personnel, fixes its prices, and the shoe departments are and remain the business of appellee, although conducted in such a way to appear to the public as a department of Dunlap's business, and carries workmen's compensation insurance on its employees, and also public liability insurance.

The amounts retained by Lessor from the funds of Lessee are designated rent; the Lease agreement states it evidences a relationship of Landlord and Tenant.

The Lease agreement provides for the performance by Lessor of certain duties, such as furnishing space, utilities, bookkeeping, office supplies, credit services, opening and closing the doors to Dunlap's Stores, all of which plaintiff pays for.

Article 17.02(b), reads:

"The Comptroller is hereby directed to determine the true ownership of any store or stores or establishments or departments, regardless of the name or operating name and collect the tax levied herein accordingly."

Since we believe that the shoe departments operated by appellee in the Dunlap Stores each constitute a separate business from that of Dunlap's business, it follows that the trial court erred in concluding otherwise.

■ The Courts are without power, in the absence of a provision in the agreed statement providing otherwise, to draw any inference, or find any facts, not embraced

in the agreement, unless, as a matter of law, such other inferences are necessarily compelled; and the judgment of the Court must only declare the law which necessarily arises from the facts agreed on. Texas Mexican Railway Company v. Scott, 60 Tex.Civ.App. 482, 129 S.W. 1170, er. ref., Ozark Plateau Land Company v. Hays, 105 Mo. 143, 16 S.W. 957.

The judgment of the trial court is reversed and judgment rendered that plaintiff, appellee herein, take nothing.

Reversed and rendered.