**Robert S. CALVERT, Comptroller of Public Accounts, et al., Appellants,**

v.

**J. WEINGARTEN, INC., Appellee.**

**No. 11764.**

Court of Civil Appeals of Texas, Austin.

July 1, 1970.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., John R. Grace, and J. H. Broadhurst, Asst. Attys. Gen., Austin, for appellants.

Vinson, Elkins, Searls & Connally, James W. McCartney, Houston, for appellee.

O'QUINN, Justice.

This is a suit for recovery of taxes paid under protest to the State Comptroller pursuant to assessments under the Texas Chain Store Tax.

The question to be decided is whether Weingarten's Green Thumb Nurseries, operated by appellee, are separate stores, subject to taxation as chain stores, or are departments of the several "supermarkets" which J. Weingarten, Inc. operates in Harris County.

The case was tried before the court without a jury. The trial court entered judgment December 30, 1969, adjudging recovery by Weingarten in the sum of $19,274 for taxes paid for three stores in the years 1962 through 1963 and for three stores in the years 1964 through 1969. The State has appealed and assigns error in the finding that the nurseries were each a part of a single store situated at the same location and not separate establishments.

We affirm judgment of the trial court.

Weingarten owns and operates a number of supermarkets in Harris County, each supermarket having a separate number. Each numbered operation comprises several departments, and each operation is separate from other numbered stores. In some of the supermarkets (four involved in this lawsuit) there is a nursery department in which plants, shrubs, trees, fertilizers, insecticides, and garden tools are displayed and sold. In each instance the nursery items are sold within enclosures or under a roof separate from areas in which food and drugs are sold. The sales area for nursery merchandise is in each operation located on the same tract or parcel of land on which food and drug sales are conducted, either adjoining or adjacent to the main building in which other sales are made. Access from one structure to the other is unobstructed by fences, walls, or other barriers, and customers may walk from one building to the other along sidewalks or across open parking areas.

The record shows that all the supermarkets are operated through several departments, such as the grocery department, produce department, meat department, drug department, tobacco department, home center department, delicatessen department, and bakery department. Sales of nursery items are handled through the nursery department. Each manager of a numbered supermarket has supervision and responsibility for all departments at his location, including management and control of the nursery division. Some of the departments in each numbered location have separate cash registers, including the nursery department.

At the close of business each day receipts from all departments, including the nursery department, are delivered to the courtesy booth manager in the main store building. Funds from the various departments, including the nursery department, are accounted for separately for purposes of cost control, but the receipts are comingled with money from sales in all departments.

Merchandise in the nursery department is available for transfer to other departments for sale by other departments. Christmas trees from nursery stock are displayed in season in front of the main building. Other nursery items, such as lawn fertilizer in sacks, are on occasions placed along the sidewalk in front of the main building. In each such instance sales of trees and other items are handled through departments other than the nursery division.

As already observed, in each of the numbered operations the nursery sales area and the main supermarket building are situated on a single tract of land owned by Weingarten. No streets or public ways, and no physical barriers within the tract, separate the main store from the nursery department. The two buildings are in close proximity to each other.

We deem it important, as shown by the record, that the nursery departments are uniformly placed in small buildings or sheds, separate from the main structure on the site, for reasons of merchandising. Many of the nursery items, such as bedding plants, shrubs, trees, and some tools, are exposed for sale in open spaces outside the sheds. Insecticides, fertilizers, soil conditioners, and other products are sold at the nursery, as well as flower pots, stepping stones, garden statuary, and bird baths. Some of the items, such as insecticides and fertilizers, have strong and distinctive odors. Other items offered for sale, including bedding flowers, shrubs, and trees, are maintained and stored in dirt, sand, or sawdust. Plants and flowers require watering and exposure to sunlight. Under such circumstances, the merchandising of most nursery items cannot be accomplished conveniently and appropriately within the main building where they would be in juxtaposition to groceries, vegetables, bakery products, milk products, meats, and delicatessen foods there being displayed and sold.

An accountant for Weingarten having supervision of the company's general accounting department testified that the four stores

involved in this case were single merchandising and mercantile establishments during the tax periods and each numbered operation was conducted as a single commercial unit.

The chain store tax of this State is levied under provisions of Chapter 17, Title 122A, Taxation-General. (Acts 1959, 56th Leg. 3rd C.S., p. 187, ch. 1, as amended; V.A.T.S. Tax.-Gen. arts. 17.01 et seq.).

Under Article 17.05 "Every person * * * [or] corporation * * * opening, establishing, operating or maintaining one or more stores or mercantile establishments within this state, under the same general management, or ownership, shall pay the license fees * * * prescribed for the privilege of opening, establishing, operating or maintaining such stores or mercantile establishments." The license fees are graduated through eight steps from $4 for one store to $825 for each additional store in excess of fifty. (Art. 17.05(b)).

Article 17.07 defines the term "store" used in the statutes:

"The term 'store' * * * shall be construed to mean and include any store or stores or any mercantile establishment or establishments not specifically exempted * * * which are owned, operated, maintained, or controlled by the same person * * * [or] corporation * * * in which goods, wares or merchandise of any kind are sold * * *."

We conclude that each of the four numbered Weingarten operations in this case was a mercantile establishment, with all of its departments under the same general management and ownership and all its departments, including the nursery, at one place or location. A mercantile establishment having one ownership and control for all its departments and a common site for the entire operation may be regarded as a single unit or store within the language of tax statutes.

The position of the Comptroller is that since the Weingarten nurseries were not un-

der the same roof with other departments, although under the same ownership and control and situated in close proximity on the same tract of land, the nurseries constituted separate stores. We do not regard determination of whether the departments were in the same building or under the same roof as controlling.

Whether the various departments are under the same ownership and management, even though under the same roof and in one building, was the test applied by this Court in 1965 in holding that leased departments in department stores under separate ownership were subject to the chain store tax. Calvert v. General Retail Corporation, 390 S.W.2d 10 (Tex.Civ.App., Austin, 1965, writ ref. n. r. e.). Article 17.02 (b) directs the Comptroller "to determine the true ownership of any store or stores or establishments or departments, regardless of the name or operating name and collect the tax levied * * * accordingly." Thus it is seen that the tax statute itself recognizes unity or separateness of ownership and management as a factor in ascertaining whether the tax is applicable.

Pursuant to an opinion of the Attorney General in 1953, the Comptroller has declined to apply the chain store tax to the several concession stands of carnivals. The Attorney General advised that carnivals "maintaining various stands within a confined area operated by one person as a single unit (i. e., integrated bookkeeping, common purchasing, etc.) * * * [were] subject to only one store tax as a single unit." (Opinions of the Attorney General of Texas, 1956, Opn. No. S–47). In that opinion the Attorney General referred to an earlier opinion in which emphasis was given to whether the various operations were confined "under one roof," and concluded that earlier reference to one roof " * * * was illusory and it is our opinion that various carnival stands operated by an individual within a confined space and managed as a single unit is subject to only one tax."

The four Weingarten supermarkets in this case were operated under one owner-

**740**

ship and with a single control of all departments carrying on business within the confined space of one site or tract of land. The chain store tax was not applicable to the nursery departments separate from the entire operation at each location or place of business.

No separate findings of fact or conclusions of law were made by the trial court and none was requested. In the judgment the court found that the nurseries in the four stores were "part of a single store or mercantile establishment situated at such locations" and were not separate stores subject to the tax.

The judgment of the trial court is in all things affirmed.

Affirmed.