ROBERT L. HURT ET AL. V. J. W. COOPER ET AL.
AND
WILLIAM McCRAW ET AL. V. S. H. KRESS & COMPANY ET AL.

No. 7266.   Decided December 1, 1937.
Rehearing overruled January 5, 1938.
(110 S. W., 2d Series, 896.)

*William McCraw,* Attorney General, *Scott Gaines, Earl Street,* and *Wm. M. Brown,* Assistants Attorney General, and *Greenwood, Moody & Robertson,* of Austin, for appellants.

The so-called license fees levied by H. B. No. 18 are in fact primarily occupation taxes levied for revenue purposes and are not regulatory or penal in nature. American Feature Film Co. v. Trumbell, 269 U. S. 597, 70 L. Ed. 431; Brown v. City of Galveston, 97 Texas 1, 75 S. W. 488; Hoefling v. City of San Antonio, 85 Texas 228, 20 S. W. 85, 16 L. R. A. 608; Texas Co. v. Brown, 258 U. S. 466, 66 L. Ed. 721, 42 Sup. Ct. 375.

House Bill No. 18 violates neither the State nor Federal Con-

stitution. C. F. Smith Co. v. Fitzgerald, 270 Mich. 659, 259 N. W. 352; Fox v. Standard Oil Co., 294 U. S. 87, 79 L. Ed. 780, 55 Sup. Ct. 333; Stewart Dry Goods Co. v. Lewis, 294 U. S. 550, 79 L. Ed. 1054, 55 Sup. Ct. 525.

*Black, Graves & Stayton,* of Austin, *Clark & Rice, Touchstone, Wight, Gormley & Price, Burgess, Chrestman & Brundidge,* and *Harold A. Bateman,* all of Dallas, *Baker, Botts, Andrews & Wharton* and *Gaius G. Gannon,* all of Houston, *James W. Peavy,* of Lufkin, *W. H. Dannat Pell* and *Gwinn & Pell,* of New York City, for appellees.

The action of the trial court in finding, as a fact, that the medium prescribed by the act for the differentiation or classification of occupations was and is utterly unreasonable and arbitrary, is amply supported by pertinent probative testimony. Stewart Dry Goods Co. v. Lewis, 287 U. S. 9, 77 L. Ed. 135, 53 Sup. Ct. 68; State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 75 L. Ed. 1248, 51 Sup. Ct. 540; Davis v. White, 260 S. W. 138.

MR. JUDGE HICKMAN, of the Commission of Appeals, delivered the opinion for the Court.

This consolidated cause is before us on certificate from the Honorable Court of Civil Appeals, Fifth Supreme Judicial District, at Dallas. That court after drafting its tentative opinion, prepared by Justice LOONEY, deemed it advisable in view of the importance of the questions involved and the necessity for an early adjudication and final disposition of the cause, to certify certain questions to this Court. All questions certified relate to the constitutionality of our so-called chain store tax statute. The certificate states:

"The cause under consideration is a consolidation of suits and pleas of intervention by incorporated mercantile companies and their respective manager-agents (appellees) against the appellants (public officials of the State) to enjoin the enforcement of an Act of the 44th Legislature, adopted at its First Called Session, being House Bill No. 18, Chap. 400, known as the Chain Store Tax Law. The mercantile companies own, operate and maintain mercantile establishments in the State, and are doing the character of merchandising described in Section 5 of the Act, each owning, maintaining, and operating one or more stores or mercantile establishments under the same general management or ownership; and, if the Act in question, as applicable to them, is constitutional and valid, said companies are liable

for the payment of the filing and license fees (or tax) prescribed by the Act according to the number of stores owned and operated by each."

The Act is in 12 sections and in substance provides, so far as material to a decision of the questions certified, as follows:

Section 1 makes it unlawful for any person, agent, receiver, trustee, firm, corporation, association or copartnership, either foreign or domestic, to operate, maintain, open or establish any store or mercantile establishment in this State without first having obtained a license to do so from the Comptroller of Public Accounts.

Section 2 provides that any person, etc., desiring to operate, maintain, open or establish a store or mercantile establishment in this State shall apply to the Comptroller of Public Accounts for a license so to do, accompanying each application with a filing fee of 50¢ for each store or mercantile establishment operated or to be operated, which filing fees are declared to be for the purpose of defraying the cost of the administration of the act.

Section 3 relates to the duty of the Comptroller to issue a license when he finds the application to be satisfactory and the filing and license fees prescribed in the act have been paid. It further provides that each licensee shall display the license so issued in a conspicuous place in the store or mercantile establishment for which same is issued.

Section 4 provides for a renewal license for each calendar year.

Section 5 provides that the term, "store, stores, mercantile establishment or mercantile establishments" wherever used in the act shall not include certain designated occupations. These so-called exemptions will be set out specifically hereinafter. That section prescribes the annual license fees as follows:

"(1) Upon one (1) store the license fee shall be One Dollar ($1);

"(2) Upon each aditional store in excess of one (1) but not to exceed two (2), the license fee shall be Six Dollars ($6);

"(3) Upon each additional store in excess of two (2) but not to exceed five (5), the license fee shall be Twenty-Five Dollars ($25);

"(4) Upon each additional store in excess of five (5) but not to exceed ten (10) the license fee shall be Fifty Dollars ($50);

"(5) Upon each additional store in excess of ten (10) but not to exceed twenty (20), the license fee shall be One Hundred Fifty Dollars ($150) ;

"(6) Upon each additional store in excess of twenty (20) but not to exceed thirty-five (35), the license fee shall be Two Hundred Fifty Dollars ($250) ;

"(7) Upon each additional store in excess of Thirty-five (35) but not to exceed fifty (50), the license fee shall be Five Hundred Dollars ($500) ;

"(8) Upon each additional store in excess of fifty (50), the license fee shall be Seven Hundred Fifty Dollars ($750)."

Section 6 makes the provisions of the act applicable to businesses controlled or held with others by majority stock ownership or ultimately controlled or directed by one management or association of ultimate management.

Section 7 defines "store," which definition will be copied later on in this opinion.

Section 8 makes it an offense for any person, etc., to operate or maintain any store or stores or mercantile establishment or establishments without having displayed in a conspicuous place in such store or establishment the license fee receipt for the current year, punishable by a fine of not less than $25.00 nor more than $100.00 and provides that each day of such violation shall constitute a separate and distinct offense.

Section 9 provides that the expenses incurred by the Comptroller of Public Accounts in the administration of the act shall not exceed the amount received by him as application fees. It further provides that all moneys collected shall be paid by the Comptroller into the State Treasury daily as received and apportions these moneys as follows: One-fourth to the available school fund and the remainder to the general fund.

Sections 10 and 11 contain no provisions material to the present inquiry.

Section 12 recites that the State is badly in need of additional revenue, which fact creates an emergency and imperative public necessity that the constitutional rule requiring bills to be read on three separate days be suspended.

Six questions are certified by the Honorable Court of Civil Appeals. The first is as follows:

"(1) Was the act in question enacted by the Legislature primarily for the purpose of raising revenue under its taxing

powers, or was it enacted primarily as a regulatory measure, under the police power?"

■ It is sometimes difficult to determine whether a given statute should be classed as a regulatory measure or as a tax measure. The principle of distinction generally recognized is that when, from a consideration of the statute as a whole the primary purpose of the fees provided therein is the raising of revenue, then such fees are in fact occupation taxes, and this regardless of the name by which they are designated. On the other hand, if its primary purpose appears to be that of regulation, then the fees levied are license fees and not taxes. Hoefling v. City of San Antonio, 85 Texas 228, 20 S. W. 85, 16 L. R. A. 608; Brown v. City of Galveston, 97 Texas 1, 75 S. W. 488; City of Fort Worth v. Gulf Refining Co., 125 Texas 512, 83 S. W. (2d) 610; Royal v. Virginia, 116 U. S. 577, 6 Sup. Ct. 510, 29 L. Ed. 735; Dayton-Goose Creek Ry. Co. v. United States, 287 Fed. 728; Texas Co. v. Brown, 266 Fed. 577, 37 C. J., p. 169, Sec. 6.

■ Applying this principle to the act in question we experience no difficulty in reaching the conclusion that the so-called license fees levied thereby are primarily occupation taxes. The act makes two separate levies. One is a levy of a filing fee of 50¢ for each store, and as to this levy it is provided that its purpose is to defray the cost of the administration of the act, and that the expenses incurred in its administration shall not exceed the amount realized therefrom. The other is a levy of a license fee for each store from which much revenue will be realized. The act apportions the revenue between the available school fund and the general fund, and the only fact stated for the existence of an emergency is that the State is badly in need of additional revenue. The tentative opinion of the Court of Civil Appeals accompanying this certificate correctly answers this question in the following language:

"We think the primary purpose of the act was to raise revenues, although the levy is mentioned as a 'license fee.' The emergency clause reciting the need of additional revenue; the amounts levied being far in excess of regulatory needs, and the distribution made after collection, indicate clearly that the act was intended, primarily at least, as a revenue measure. We do not think it a matter of significance that the levy is called a 'license fee,' as its payment gives the right to carry on the business without the performance of any other condition."

Question No. 2 was submitted only in the event that our answer to Question 1 should be that the primary purpose of the

act was regulation under the police.power. In view of the answer which we have returned to Question 1, that question passes out of the certificate.

Questions 3 and 4 are as follows:

"(3) Is Section 5 (and related provisions) of the act valid against the objection that it violates either of the following provisions of the State Constitution, to-wit: Section 3 of Article 1, guaranteeing equal rights and prohibiting special privileges; Section 19 of Article 1, the 'due course of law' provision; and Section 2 of Article 8, the equal and uniform occupation tax provision?

"(4) Is Section 5 (and related provisions) of the act valid against the objection that it violates the 'due process' or the 'equal protection' clauses of the Fourteenth Amendment to the Federal Constitution?"

The provisions of our State Constitution referred to in Question 3 are as follows:

"Art. I, Sec. 3. All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

"Art. I, Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

"Art. VIII, Sec. 2. All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; * * *."

The provisions of the Fourteenth Amendment of the Federal Constitution referred to in Question 4 are as follows:

" * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

■ The opinion of this Court speaking through Justice WILLIAMS in Texas Co. v. Stephens, 100 Texas 628, 103 S. W. 481, is the leading case in this jurisdiction on the subject of occupation taxes. Many phases of the subject were presented in that case and the opinion leaves little, if anything, to be said on the questions discussed. As bearing upon the particular question now being considered this language from that opinion is appropriate:

"The very language of the Constitution of the State implies power in the Legislature to classify the subjects of occupation taxes and only requires that the tax shall be equal and uniform upon the same class. Persons who, in the most general sense, may be regarded as pursuing the same occupation, as for instance merchants, may thus be divided into classes and the classes may be taxed in different standards. Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage. The considerations upon which such classifications shall be based are primarily within the discretion of the Legislature. The courts, under the provisions relied on, can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. This is the rule in applying both the State and Federal Constitutions, and it has been so often stated as to render unnecessary further discussion of it. * * * ."

That is a definite holding that merchants may be divided into classes and the classes taxed in different amounts and according to different standards; that the considerations upon which such classifications are based are primarily within the discretion of the Legislature, and that courts can interfere only when it is made clearly to appear that there is no reasonable basis for the attempted classification. If there is a reasonable basis or, to express it differently, if it can not be said that the Legislature acted arbitrarily, the courts will not interfere. Mere differences in methods of conducting businesses have long been recognized in this State as sufficient to support the classification of merchants for the purpose of levying occupation taxes. For instance, our statutes (See Art. 7047) levy occupation taxes on itinerant merchants and peddlers. The difference between their occupations and that of an ordinary merchant is not great, but it would hardly be contended at this time that it is not sufficient to support a separate classification.

■ We quote further from the Stephens case:

" * * * Differences in the profits derived, in the extent of the consumption of the articles, and therefore in the facility with which the burdens may in the course of business be distributed among consumers generally, and other conditions that might be supposed could properly be taken into consideration by the

Legislature in making classifications and determining the amount of the tax to be laid upon each; and it would be only an extreme and a clear case that would justify an interference by the courts with the legislative action. We see nothing of the kind in this law. The mere fact that discrimination is made proves nothing against a classification which is not, on its face, an arbitrary, unreasonable, or unreal one. * * * ."

In principle that language comes close to deciding, if in truth it does not decide, that the classifications made by the Legislature in the act under review are valid.

But we are not compelled to resort alone to analogies. While this act represents the first attempt of our Legislature to levy an occupation tax upon the chain-store method of merchandising, this form of taxation is by no means a thing new in this country. Many States have similar statutes and many courts, Federal and State, have construed and upheld them as against the same attacks made in this case. Of particular weight are the decisions of the Supreme Court of the United States. This not alone because of the eminence of that tribunal, but also because, on the question of uniformity and equality of occupation taxes within the different classes, the requirements under the Fourteenth Amendment of the Federal Constitution as interpreted by that Court are essentially the same as the requirements under Art. 8, Sec. 2, of our State Constitution. Dallas Gas Co. v. State, 261 S. W. 1063; Southwestern Telephone & Telegraph Co. v. City of Dallas, 174 S. W. 636; Texas Co. v. Stephens, supra. Each requires that all persons falling within the same class must be taxed alike. Each recognizes the power of the Legislature to make classifications, and each requires that such classifications, when made, must not be unreasonable, arbitrary or capricious.

The leading case on the subject of chain store taxation is State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 75 L. Ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536. The case involved the constitutionality of an act of the Legislature of the State of Indiana very similar to, in fact essentially the same as, the act under review. As in the instant case the complainant was successful in the trial court. The contentions there urged and the evidence offered were practically the same as the contentions and the evidence in the instant case. Mr. Justice ROBERTS delivered the opinion of the court in that case. The whole question was discussed by the learned Justice and numerous distinctive features pointed out between the business of a chain store and that of other types, such as the following: Quantity buying, ability to pay cash and receive discounts, skill in buying, warehousing and distribution from single warehouses, capital,

unified advertising, superior management, standard form of display, concentration of management in special lines, and standardization. These distinctive features were held to be interrelated and interdependent in the chain store business. The opinion recognizes that some of them may be found in general independent stores, but states that they do not all exist therein as in chain stores. The court accordingly reversed the judgment of the trial court which held the Indiana law unconstitutional and ordered the bill of complaint dismissed, and this notwithstanding the trial court found from the evidence that there was no reasonable basis for the classification. That decision has been consistently followed by the court rendering it as well as many other courts, State and Federal.

The next case to come before the Supreme Court of the United States was Louis K. Liggett Co. v. Lee, 288 U. S. 517, 53 Sup. Ct. 481, 77 L. Ed. 929, 85 A. L. R. 699. The Florida chain store tax act was there brought under review. It was stricken down because of a provision not present in the Jackson case or in this case, but the doctrine of the Jackson case was vigorously reaffirmed. We quote from the opinion in that case:

"In support of the allegation of arbitrary and unreasonable discrimination the bill recites facts from which appellants claim the conclusion is inevitable that there is no difference between the method of conducting chain stores and those employed in department stores, so-called voluntary chains, and singly operated units. This is but a reiteration of the contention made and overruled in State Tax Comrs. v. Jackson, 283 U. S. 527, 75 L. Ed. 1248, 51 S. Ct. 540, 73 A. L. R. 1464, 75 A. L. R. 1536. It was there held that whatever may be said of individual similarities and differences between chain store operation and the conduct of a single shop or a department store the former employ distinguishable methods of conducting business, and the Legislature may make the difference in method and character of the business the basis of classification for taxation. * * *

" * * * The decision in the Jackson case was based not upon any single feature of chain store management, but upon the ultimate fact of common knowledge, illustrated and emphasized by the evidence, that the conduct of a chain of stores constitutes a form and method of merchandising quite apart from that adapted to the practice of the ordinary individually operated small store or department store; and that the difference between an integrated and a voluntary chain is fundamental. While incidents of the operation of the one may be quite similar to those found in the other, there is a clear distinction between one

owner operating many stores and many owners each operating his own store with a greater or less measure of cooperation voluntarily undertaken. The legislature may make the distinction the occasion of classification for purposes of taxation. Neither similarity of opportunities and advantages in some aspects, nor the fact that the one kind of store competes with the other, is enough to condemn the discrimination in the taxes imposed. It is needless to repeat what was said in the Jackson Case to the effect that the difference between the subjects taxed need not be great, and that if any reasonable distinction can be found the duty of the court is to sustain the classification embodied in the law."

The constitutionality of the West Virginia Chain Store Tax Act was before the Supreme Court of the United States in Fox v. Standard Oil Co., 294 U. S. 87, 79 L. Ed. 781, 55 Sup. Ct. 333. The opinion reaffirms the decisions in the Indiana and Florida cases. From that opinion we quote:

" * * * The opinion in Jackson's Case enumerates some of the advantages of chain store operation, and finds a sufficient basis for taxing chains differently from stores separately owned. The opinion in Liggett's Case makes it clear that the list of benefits was for illustration only, but that in every 'integrated chain,' whatever its particular quality, there is something constant and distinctive which marks it off from stores maintained in separate ownership, and even from those combining in cooperative leagues. * * * ."

The chain store tax of the State of Louisiana was considered by the Supreme Court of the United States during the current year in the case of Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U. S. 412, 57 Sup. Ct. 772, 81 L. Ed. 1193. That tax differed from the one under consideration and those involved in the Jackson and Liggett cases in that the tax was based on the number of stores or mercantile establishments included under the same general management, supervision, ownership or control, whether operated in the State of Louisiana or not. The constitutionality of the act was upheld and the decisions in the Jackson and Liggett cases reaffirmed. Other courts, both State and Federal, have sustained acts similar to ours. Among them may be cited the following: Penney Co. v. Diefendorf, 54 Idaho 374, 32 Pac. (2d) 784; Safeway Stores v. City of Portland, 149 Oregon 581, 42 Pac. (2d) 162; Great A. & P. Tea Co. v. Spartanburg, 170 S. C. 262, 170 S. E. 273; Smith Co. v. Fitzgerald, 270 Mich. 659, 259 N. W. 352; Southern Gro. Store v. South Carolina Tax

Comm., 55 Fed. (2d) 931; Penney Stores v. Mitchell, 59 Fed. (2d) 789.

The reasoning in those opinions follows closely that employed by Justice WILLIAMS in the Stephens case. In fact, it might well have been cited as·an authority for the conclusion announced. It all leads to this: To strike down the act we must hold that the Legislature acted arbitrarily or capriciously. Courts generally over the country, including the highest court in the land, hold that reasonable differences justifying the classification exist. It can not be demonstrated that they do not exist. How, then, could we at this late day justify a holding that the classifications are arbitrary? Only by announcing that the differences seen by all those great courts are but the fruits of their imaginations. We are unwilling to assume such a critical attitude.

One of the bases of classification is the number of stores; the tax being graduated according to numbers. The percentage of increase is not uniform throughout all the brackets. The con-.tention is made that this lack of uniformity demonstrates that the Legislature acted arbitrarily in selecting the number of stores to be grouped in the various brackets. From the very nature of the act of classification there inheres in it some element of arbitrariness. As the number of stores increases the differences in the methods of doing business increase. It can not be demonstrated that the advantages or differences of methods of doing business increase in exact proportion to the increase in the number of stores in a chain. To require uniformity in this regard would be to hold that the differences of methods and advantages are susceptible of mathematical demonstration. Obviously the problem is not that simple. The lines must be drawn somewhere, and the authorities above cited hold that the determination of where to draw them is for the legislature and not for the courts.

■ We answer Questions 3 and 4 in the language of the conclusion announced in the tentative opinion of the Court of Civil Appeals:

"So, we conclude that the validity of the act in its affirmative operation—that is, in the classification of the subjects taxed—is no longer an open question, but has been definitely settled against the contention of appellees."

Question No. 5 is as follows:

"(5) Is Section 5 (and related provisions) of the act valid in view of the exemptions, as against the contention that the exemptions are not based upon any factual difference between

the burdened and unburdened subjects, but are unreasonable, whimsical, arbitrary, therefore violative alike of the provisions of the State and Federal Constitutions mentioned in Questions 3 and 4?"

The act does not in terms provide that certain stores or mercantile establishments are exempted from its operation. In Section 5, however, will be found this provision:

"Provided that the term, 'store, stores, mercantile establishment or mercantile establishments' wherever used in this act shall not include (1) wholesale and/or retail lumber and building material businesses engaged exclusively in the sale of lumber and building material; (2) and/or oil and gas well supplies and equipment dealers (3) or any place of business engaged exclusively in the storing, selling, or distributing of petroleum products and servicing of motor vehicles; (4) or any business now paying an occupation tax measured by gross receipts; (5) or any place or places of business used as bona fide wholesale or retail distributing points by manufacturing concerns for distribution of products of their own manufacture only; (6) or any place or places of business used by bona fide processors of dairy products for the exclusive sale at retail of such products." (Numbering ours.)

Were that the only provision in the entire act upon the subject it might be contended that the businesses excluded were not stores or mercantile establishments, and that, since the act imposed the tax only upon such businesses, there are in fact no exemptions therein. But, considering the act as a whole, including its caption and definition of stores, it is made affirmatively to appear that at least some of the businesses excluded from the operation of the act were regarded as stores, and that the exclusions were in fact intended as exemptions. They will be so treated in answering Question 5. Indirectly, if not directly, the question of exemptions is involved in every act levying an occupation tax. The Constitution empowers the Legislature to classify the subjects of occupation taxes, the only requirement being that the taxes be equal and uniform upon the same class. The selection of subjects of taxation, as stated by Mr. COOLEY in his work on Taxation, second edition, p. 200, is of itself an exemption of what is not selected. The act under review does not make the number of stores owned or operated under the same management or control the sole basis for the classifications therein contained, but, considering it as a whole, it seems clear that there are two bases, namely, the number of stores owned or operated under the same management or control and the kind

or kinds of goods sold in those stores. Stores selling certain kinds of goods are taxed; those selling other kinds are not taxed. That construction distinguishes this act from the one condemned in Pullman Palace Car Co. v. State, 64 Texas 274, 53 Am. Rep. 758. In that case one fact was made the basis of the tax, while in this case two facts must concur to form the basis.

■ It would not be argued that the Legislature is without power to levy a tax upon dry goods merchants without at the same time levying a like tax upon grocery merchants. The fact that the merchants not taxed, or those exempted from the tax, sell a different kind of goods from those which are taxed is an all sufficient justification of the classification or exemption. This is well established. In Texas Co. v. Stephens, supra, this Court upheld an act of the Legislature which levied a gross receipts tax on wholesale dealers in petroleum products as against the contention that it was discriminatory in that it did not levy a like tax upon wholesale dealers in other commodities. In Ex parte Walker, 121 Texas Crim. Rep. 145, 52 S. W. (2d) 266, the Court of Criminal Appeals upheld a statute imposing an occupation tax on owners, managers or exhibitors of coin vending machines, but exempting pay telephones and gas meters, and in Ex parte Day, 127 Texas Crim. Rep. 367, 76 S. W. (2d) 1060, that same court upheld a statute levying an occupation tax upon owners, managers or exhibitors of coin-operated businesses of various kinds, but exempting pay telephones, gas meters, pay toilets and sanitary drinking cup vending machines. The principle is so well settled as to require no further citation of authorities.

The contentions with reference to most of the so-called exemptions may be disposed of by the mere statement that the kinds of goods sold by the exempted stores are different from those sold by the taxed stores. This is true of lumber yards, oil and gas well supply houses, service stations, and places used by bona fide processors of dairy products. The exemption of oil and gas well supply dealers is expressed in broad terms. Literally it seems to state that the exemption is not alone to businesses dealing in certain commodities, but is one personal to the dealers. However, it is reasonably susceptible of the construction that it covers only the oil and gas well supply business, and that persons engaged in that business are not exempted when engaged in other taxed businesses. It is our duty to give it that construction in passing upon its validity.

The fourth exemption is any business "now paying an occupation tax measured by gross receipts." Attention is directed to the fact that the word "now" is used in that exemption. We

need not consider the question of whether the mere fact that a given business is paying a gross receipts tax would justify its exemption from this tax. It appears that the only business which would be exempted under this provision is that of publishing and selling textbooks. With this explanation this exemption falls in the class of those just mentioned and will be upheld upon the same ground that they are upheld.

Exemption No. 5 applying to manufacturing concerns distributing products of their own manufacture has been particularly singled out and attacked as being arbitrary. It is well to consider the exact language of that exemption. It is as follows:

" * * * or any place or places of business used as bona fide wholesale or retail distributing points by manufacturing concerns for distribution of products of their own manufacture only; * * * ."

██ In Section 7 of the act is found a definition of "store." It is as follows:

"The term 'store' as used in this Act shall be construed to mean and include any store or stores or any mercantile establishment or establishments not specifically exempted within this Act which are owned, operated, maintained, or controlled by the same person, agent, receiver, trustee, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold, at retail or wholesale."

The statute having defined the word, we are not concerned with its usual meaning. Under that definition a mercantile establishment at which goods, wares or merchandise of any kind, except those exempted, are sold is a store and is taxable as such, and this even though it may also be a distributing point. Fox case, supra. Conversely, a mercantile establishment at which no sales are made is not a store, and therefore not taxable. The test is whether sales of goods, wares or merchandise are made at the place. The language of exemption 5 does not disclose a legislative intent to exempt any mercantile establishment at which sales of such commodities are made. Much was said in oral argument and much is written in the briefs about automobile tire manufacturing concerns and shoe manufacturing concerns which operate stores in this State, and the argument is pressed that, since their businesses are exempted under this exception, others selling the same kinds of goods are illegally discriminated against. We can not accept the premise upon which the argument is built. If these, or any other manufac-

turing concerns, operate a store or stores, mercantile establishment or establishments, at which they sell their manufactured products, and the business of selling such products is not exempted by some other provision of this act, they are subject to this tax the same as any other person or concern engaged in the mercantile business.

The question naturally arises, what businesses are exempted by this provision? In passing upon the validity of the statute it is not necessary to answer that question for, if there be none, its validity is not affected by the provision. It may be that some manufacturing concerns maintain bona fide distributing points at which no sales are made, but from which they merely distribute at wholesale to their stores or at retail to purchasers from their sales agents. If so, such businesses would appear to be within the terms of this provision. Obviously they would not come within the affirmative operation of the statute as we have construed it, and therefore no express exemption was required to relieve them from the burden of the tax. But, if the Legislature desired to make that matter certain by adding exemption 5, it did not thereby imperil the statute, but merely added a surplus provision. We need not, however, indulge in any speculation on the subject of what businesses, if any, are included within the terms of this so-called exemption. Sufficient is it, we think, to observe that had the Legislature intended to exempt businesses operated by manufacturing concerns engaged in selling their products, it would have employed more apt and exact language than that found in this provision. Had its intention been to exempt stores, why was the term "bona fide" inserted, and why were they called distributing points? Why, also, was not the word "sale" used instead of the word "distribution"? The least that can be said is that the language is reasonably susceptible of the construction which we have given it. That construction upholds the act and should, therefore, be applied rather than one which might invalidate it. The differences between the businesses which we hold to come under this provision and those taxed are undoubtedly sufficient to justify the classification.

Question No. 5 is answered "yes," which renders it unnecessary to answer Question No. 6.

Opinion adopted by the Supreme Court December 1, 1937.

Rehearing overruled January 5, 1938.