

# THE ATTORNEY GENERAL
## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

November 1, 1972

Hon. Joe Resweber
County Attorney
Harris County Courthouse
Houston, Texas    77002

Opinion No. M- 1255

Re:  Authority of Harris
County Hospital District
to operate a chaplain
program in its hospitals.

Dear Mr. Resweber:

You ask our opinion in answer to two questions:

"1.  May the Harris County Hospital District
legally employ on a full time basis qualified
Hospital Chaplains to operate a Chaplain prog-
ram for District hospitals?

"2.  May the Harris County Hospital District
legally employ qualified religious persons in
training positions, which lead to qualifi-
cations as Hospital Chaplains?"

Our answer to your first question is "Yes" and our ans-
wer to your second question is a qualified "Yes".

Our answers to your questions must be determined with-
in the context of two propositions.  First, whether the Texas
constitutional and statutory provisions pursuant to which the
hospital district was created authorized the chaplaincy prog-
rams in question.  Second, whether the establishment clause
of the First Amendment to the Constitution of the United

-6141-

States[1] or Article I, Section 7 of the Texas Constitution[2] prohibit these programs.

We find no court decision of any jurisdiction in point; nor do we find any opinion of the Attorney General of Texas bearing on these questions.

The Constitution of Texas, Article IX, Section 4, adopted in November, 1954, authorizes the legislature to provide for the creation of county-wide hospital districts in certain counties and imposes the condition,

> ". . . that such Hospital District shall assume full responsibility for providing medical and hospital care to needy inhabitants of the county, . . ."
> (Emphasis added)

For the reasons hereinafter stated, we hold that the service of a chaplain is a long, well-established part of medical and hospital care.

The legislature had previously enacted Article 4494n, Section 1, Vernon's Civil Statutes, which became effective upon adoption of this Section 4, authorizing:

> ". . . the establishment of a hospital or hospital system to furnish medical aid and hospital care to the indigent and needy persons residing in said Hospital District; . . . "

---

[1] This clause reads as follows:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . ."

[2] This Section reads as follows:  "No money shall be appropriated, or drawn from the Treasury for the benefit of any sect, or religious society, theological or religious seminary; nor shall property belonging to the State be appropriated for any such purposes."

We are squarely confronted with the question of whether the chaplain programs[3] which are the subject of your inquiry are within contemplation of[4] the constitutional and statutory authorization to the hospital district,

> ". . . to furnish <u>medical</u> <u>aid</u> and <u>hospital</u> <u>care</u> to the indigent and needy persons re-siding in said Hospital District: . . ." (Emphasis added).

---

[3] Webster's Third New International Dictionary defines chaplain as "A Clergyman officially attached to the army or navy, to some public institution, or to a family or court."

The same authority defines "clergyman" as, "A member of the clergy: an ordained minister: a man regularly authorized to preach the gospel and administer its ordinances: one in holy orders."

The job description of the position classification of chaplain prescribed in the original Position Classification Plan adopted in 1961 has remained sub-stantially the same to the present time. Generally, a chaplain is required to be a graduate ordained min-ister of religion. He performs the usual ministerial duties of conducting services and providing pastoral care and counseling under the particular specialized conditions of the institution. All this is performed for patients and students in training and their fami-lies within the framework of his ordination vows and the administrative and professional policies of the institution in which he serves. He is a member of the staff of the institution. Chaplains Classes II and III have supervisory duties over those of a lower class.

[4] This opinion considers only situations of voluntary patients and not those who may be incarcerated or de-tained by any order of the sovereign, whether under the police, public health or other power, nor persons in the military forces. The sovereign is constitutionally

The position or classification of chaplain has been provided for by the general law of Texas since 1961. Art. 6252-11, Sec. 3, V.C.S. It was named in the original Position Classification Plan filed with the Governor on May 10, 1961. When employees in the State Hospitals and Special Schools came under this Plan on September 1, 1963, two additional classes of chaplain, numbers II and III were added. Since that time these three classes of chaplains (Chaplain I, II and III, class numbers 5081, 5082 and 5083 respectively) have been included among those positions authorized by the legislature pursuant to Article 6252-11, Sections 1, 2 and 3. The general appropriation act for each year beginning September 1, 1961 through the last Act for the biennium ending August 31, 1973 has expressly named these classes of chaplains and made provisions for their salaries.[5]

---

required to furnish chaplains to persons incarcerated under its authority. Barrett v. Rodgers, 410 F.2d 995 (Ct. of App., Dist. of Col. Cir. 1969); Horn v. People of California, 321 F.Supp. 961, (D.C.E.D.Cal. 1968, aff. without Opin., 436 F.2d 1375, cert. den. 401 U.S. 976); Military Law Review, Vol. 55 (Winter 1972), p. 1, 18-21, "Constitutional Rights of Prisoners." For persons in the military, chaplains have been provided by the several military departments from the earliest history of our country. The constitution probably would so require. Maryland Law Review, Vol. 24 (No. 4, Fall 1964), p. 377, "Military Chaplains—A Constitutionally Permissible Accommodation Between Church and State."

[5]
1) Acts 57th Leg., 1st C.S., 1961, p. 374, 380
2) Acts 58th Leg., 1963, R.S., p. 1642, 1648
3) Acts 59th Leg., 1965, R.S., p. 1922, 1928, 1929
4) Acts 60th Leg., 1967, R.S., p. 2300, 2306
5) Acts 60th Leg., 1st C.S., 1968, p. 346, 355

In addition to the foregoing authorizations for chaplains, the legislature in 1961 and for each year since that time, in each of the general appropriations acts, has authorized certain compensations for ". . . interns, <u>chaplains in training</u>, and student nurses." (Emphasis added)[6]

We note here that compensation is provided for chaplains in training as well as for interns and student nurses.

The current general appropriation Act,[7] (Article II,) makes this provision applicable to the following agencies or departments of the state:  Department of Health, Department

---

6) Acts 61st Leg., 2d. C.S., 1969, p. 575, 585
7) Acts 61st Leg., 2d. C.S., 1969, p. 997, 1007
8) Acts 62nd Leg., 1971, R.S., p. 3778, 3788
9) Acts 62nd Leg., 1972, 3d. C.S., p. V-17, 27, Journal Supp.

[6]
1) Acts 56th Leg., 3d C.S., 1959, p. 496
2) Acts 57th Leg., 1st C.S., 1961, p. 243
3) Acts 58th Leg., 1963, R.S., p. 1436
4) Acts 59th Leg., 1965 R.S., p. 1729
5) Acts 60th Leg., 1967, R.S., p. 2133-2134
6) Acts 60th Leg., 1st C.S., 1968, p. 68
7) Acts 61st Leg., 2d. C.S., 1969, p. 280
8) Acts 61st Leg., 2d. C.S., 1969, p. 684
9) Acts 62nd Leg., 1971, R.S., p. 3484
10) Acts 62nd Leg., 1972, 3d. C.S., S.B. 1, p. II-41, Journal Supp.

This provision in the current Act (Acts 62nd Leg., 1972, 3d. C.S. p. II-41), which is in all respects similar to the provisions in each of these Acts, reads as follows:  "As compensation for services rendered, any institution under the jurisdiction of the respective governing boards may provide

of Mental Health and Mental Retardation, Mental Hospitals and Centers, Schools for Mentally Retarded, Texas Research Institute of Mental Sciences and the Texas Youth Council.[8] Our information from the State Classification Officer is that under authority of the general appropriation act which covered the fiscal year September 1, 1971, and ending August 31, 1972, these state agencies employed forty chaplains.[9]

_____

free meals for food service personnel and volunteer workers, and may furnish housing facilities, meals and laundry service in exchange for services rendered by interns, chaplains in training, and student nurses."

[7] Acts 62nd Leg., 1972, 3d C.S., S.B. 1, Journal Supplement.

[8] This authorization is under the heading "SPECIAL PRO-VISIONS RELATING TO ALL HOSPITALS, SPECIAL SCHOOLS, YOUTH INSTITUTIONS, AND AGENCIES OR OFFICES OF ARTICLE II" which heading begins at page II-33 of the current general appropriation act.  Article II of the act is entitled "PUBLIC HEALTH, HOSPITALS, SPECIAL SCHOOLS AND YOUTH INSTITUTIONS" (at p. II-1).  See also Table of Contents, at p. 1-vii, Journal Supplement.

[9] These agencies and the number of chaplains employed by each on May 31, '1972, was as follows:

(1)  State Health Dept., a total of 4 chaplains:  San Antonio State Chest Hosp., 2; East Tex. Chest Hosp., 1; Harlingen State Chest Hosp., 1.
(2)  Texas Youth Council, a total of 11 chaplains: Deputy Executive Director and Supervising Chaplain plus an assistant, 2; Waco State Home, 1; Brownwood State Sch. for Girls, 1; Gatesville State Sch. for Boys, 4; Mountain View State Sch. for Boys, 2; and Gainsville State Sch. for Girls, 1.

We are informed that authorizations for payment of chaplains in many of the state medical and mental hospitals and other eleemosynary institutions has been expressly provided for in the general appropriation acts for many years prior to 1961.  We have made two spot checks at random of the general appropriation acts for these institutions for two bienniums. The first is for the period 1921-1923 (Acts 37th Leg., lst C.S., 1921, ch. 36) and the second is for the period 1941-1943 (Acts 47th Leg., 1941, R.S., ch. 567).  The first specifically lists appropriations for chaplains in eleven different institutions[10] and the second makes specific appropriation for chaplains in fifteen different institutions.[11]

---

(3)  Texas Dept. of Mental Health and Mental Retardation, a total of 25 chaplains:  Texas Research Institute for Mental Sciences, 1; Austin State Hosp., 5; San Antonio State Hosp., 3; Vernon Geriatric Center, 1; Terrell State Hosp., 2; Rusk State Hosp., 1; Wichita Falls State Hosp., 1; Big Spring State Hosp., 1; Mexia State Sch., 2; Denton State Sch., 1; Richmond State Sch., 1; Corpus Christi State Sch., 1; San Angelo Center, 1; Travis State Sch., 1; Abilene State Sch., 1; Austin State Sch., 1; and Lubbock State Sch., 1.

In addition to these forty Texas Dept. of Corrections employed eleven chaplains for whom specific appropriation was made by other provisions of this Act (at p. 3548) plus four others on part-time and full-time basis who were paid out of another fund.

[10]Line item appropriations are made for one chaplain in each of the following institutions:  tuberculosis hospital, p. 96; orphans home, p. 87; Confederate Home, p. 71; epileptic colony, p. 85; feeble minded colony, p. 94; juvenile training school, p. 90; and one chaplain in each of the five insane hospitals, p. 73, 77, 80, 82 and 102.

[11]Line item appropriations are made for one chaplain in each of fifteen state institutions as follows:

The long continuous history of chaplains in the state chest hospitals (formerly tuberculosis hospitals) is set forth in the letter to us from the Medical Director in the Texas State Department of Health in charge of those hospitals from which we quote:

> "I feel that the presence of a chaplain on the staff of our State Chest Hospitals is an important item in therapy.
>
> "The science of Pastoral Medicine is of proved value in the treatment of patients in hospitals, particularly long term patients such as those suffering with tuberculosis.
>
> "In the case of the seriously ill patient and the highly distraught relative, the chaplain is essential to psychologically preserve calm and to facilitate indicated treatment to the patient. Medical science well knows that peace of mind is a most effective adjunct to medical management.
>
> "Chaplains have been an integral part of the staffs of our chest hospitals since the hospitals' inception. A chaplain was

---

tuberculosis hospital, p. 976; school for the blind, p. 970; correctional school for boys, p. 975; correctional school for girls, p. 972; and one chaplain in each of the three orphans homes, p. 964, 966, and 967; one chaplain in each of the six mental hospitals, pgs. 946, 949, 952, 954, 957 and 960; one chaplain at the Austin State School, p. 941; and one chaplain at the Abilene State Hospital, p. 944.

>a member of the staff of the old McKnight
>Hospital when it was first founded on
>July 4, 1912. Since that time all of our
>hospitals have had chaplains on their
>staffs who have performed and continue to
>perform a most important part in the treat-
>ment of our long term tuberculosis cases."

The Chief of the Medical Service of one of the large
private hospitals in Texas concurs in support of the chap-
laincy program in medical hospitals. He states (in part):

>". . . I can say without hesitation that
>patient care is greatly improved if there
>is an active chaplain program that is inte-
>grated with the nursing and physician ac-
>tivities. The chaplain is frequently able
>to communicate far better with the patient
>and the family than the nurse or physician.
>Also, not infrequently, the chaplain spends
>time in communicating which the nurse and
>the doctor may not spend . . . ."

A leading surgeon in the Texas Medical Center in Houston
corroborates this fact observing that "There are many social
and religious aspects that pertain to illness which are best
handled by persons in the chaplaincy service . . . ."

The uncontroverted facts presented to us are that chap-
lains had been employed in a number of the state medical
hospitals for many years prior to the adoption of Article
IX, Section 4 to the Texas Constitution in 1954 and enact-
ment of the enabling legislation (Art. 4494n, Sec. 1) in the
same year, and that the legislature had made specific approp-
riations for their services. This long continued legislative
construction and practice and universal construction and ac-
quiescence by all state officers and the public should not
and will not be declared illegal by the Attorney General, in
the absence of a controlling decision of our courts, unless
it is clearly unlawful. 53 Tex.Jur.2d 257-267, Statutes,

Sec. 176-178; <u>Hurt v. Cooper</u>, 130 Tex. 433, 110 S.W.2d 896 (1937); <u>Central Power & Light Co. v. State</u>, 165 S.W.2d 920, 924-925 (Tex.Civ.App. 1942, error ref.). This long continued construction was specifically authorized by enactment of the general substantive law, the Position Classification Act of 1961 (Art. 6252-11). This Act specifically provides for the position of chaplain as a state employee. Every general appropriation act since has made appropriation for this class of employee in the state's medical hospitals.[12]

We interpret this long uninterrupted legislative history to evince the legislative intent and declaration that the service of chaplains is by it considered as a necessary service incident to treatment of medical patients in state hospitals. The professional usage of chaplains by the medical profession in the treatment of medical patients in these hospitals is also without controversy before us. This established intent and recognized practice existed long before the adoption in 1954 of both the constitutional and statutory provisions under which your hospital district operates and must be considered in interpreting these laws. This principle of construction has been stated as follows:

> ". . . the courts have declared that a
> statute will be construed in the light
> of contemporaneous history, and that
> the circumstances of business usage,
> and the life and habits of the people
> at the time of the passage of the act
> will be considered. Judicial notice

---

[12] Art. 6813b, V.C.S., and the several general appropriations acts. See Footnotes 6 and 7, supra. The appropriation acts usually authorize chaplains under a general heading such as "Salaries of Classified Positions". For example, see the appropriation to the East Texas Chest Hospital, being Item 6 at p. II-6 of the current general appropriation act (Acts 62nd Leg., 3d C.S., 1972, S.B. 1, Journal Supplement).

> will be taken of conditions of common
> notoriety existing at the time of the
> passage of an act. And conditions and
> facts then existing and within the
> knowledge of the legislature, and the
> history of the subject matter involved,
> are properly considered in ascertain-
> ing the meaning and object or the scope
> and effect of an act." 53 Tex.Jur.2d
> 251-252, Statutes, Sec. 172.

The law seems to be settled to the effect that a county hospital district, such as Harris County Hospital District, created and operating under Article IX, Section 4 of our State constitution and Article 4494n, Section 1, is a public body which expends public funds for a governmental function. Ritch v. Tarrant County Hospital District 476 S.W.2d 950 (Tex.Civ.App. 1972, aff. 480 S.W.2d 622, Tex. Sup. 1972); Rodriquez v. Medical Arts Hospital, 437 F.2d 1204 (5th Cir. 1971); Arseneau v. Tarrant County Hospital District, 408 S.W.2d 802 (Tex.Civ.App. 1966, error ref. n.r.e.). The status of Harris County Hospital District with reference to expenditure of its public monies for the chaplain programs in question appears to be wholly analagous to the legal status of the State in expenditure of state monies for its chaplain programs.

We hold that the constitutional and statutory provisions under which the Harris County Hospital District was created and operates authorize the employment by the District of chaplains and payment of their salaries from the public funds of the District.

We consider now whether the establishment clause of the First Amendment to the Constitution of the United States[13] or Article I, Section 7 of the Texas Constitution[14] are a

---

[13] See Footnote 1, supra
[14] See Footnote 2, supra

bar to the chaplain programs under consideration. This is the field of church-state relations. No case of any court or other legal authority has been found or called to our attention which is controlling on this question.

At the outset of this consideration we note that chaplains have been an integral class of federal employee of the National Home for Disabled Volunteer soldiers (now an agency of the Veterans Administration) since the year 1866 and of the Veterans Administration medical and other hospitals since their inception. All doubts concerning the constitutionality of acts of the Legislature, and of the executive and administrative interpretations given those acts, must be resolved, if possible, in favor of their validity. 53 Tex.Jur.2d 227, Statutes, Sec. 158.

The chaplain programs under consideration appear to have a secular legislative purpose; their principal or primary effect appears to neither advocate nor inhibit religion and they do not appear to foster "an excessive governmental entanglement" with religion. Lemon v. Kurtzman, 403 U.S. 602, 612-613 (1971) and Tilton v. Richardson, 403 U.S. 672 (1971). The chaplaincy programs of the State appear to be within the scope of the accommodation allowed under the establishment clause by McGowan v. Maryland, 366 U.S. 420 (1961); Maryland Law Review, Vol. 24 (No. 4, Fall 1964), page 377, "Military Chaplains - A Constitutionally Permissible Accommodation Between Church and State." We hold that these enactments of the Legislature and acts of the several state agencies and institutions named in the several general appropriation acts considered in this opinion in employing chaplains and maintaining a chaplain training program are valid under the First Amendment to the United States Constitution.

We also are of the opinion that these enactments and acts are valid under Article I, Section 7 of the Texas Constitution which reads:

> "No money shall be appropriated, or drawn
> from the Treasury for the benefit of any
> sect, or religious society, theological
> or religious seminary; nor shall property
> belonging to the State be appropriated for
> any such purposes."

The only relevant case which we find which construes this Section is <u>Church v. Bullock</u>, 104 Tex. 1, 109 S.W. 115 (1908). The court held that voluntary religious type exercises in the public schools did not violate this Section. Our opinion is that the services of a chaplain and the type of chaplain training program approved by the Legislature is directed toward aid of individuals who desire this type of aid and is not ". . . for the benefit of any sect, or religious society, theological or religious seminary; . . . ."

Your second question asks whether Harris County Hospital District may legally employ qualified religious persons in training positions which lead to qualifications as hospital chaplains. We are not advised of the nature of the training program proposed. However, if it is legally similar to the training program for chaplains which has been carried out in the state institutions and which apparently has been approved by the Legislature, then your program also would be within the legislative intent for providing full medical aid and hospital care to the indigent and needy persons residing in your hospital district. We will assume that the training program will be administered in conformity to the constitutional guidelines hereinabove discussed and that the program does not contemplate training in religion but rather training in hospital administration and ministering to the individual needs of the patients as may be requested.

## S U M M A R Y

The Harris County Hospital District may employ chaplains in its hospitals, since the service of a chaplain is a long, well-established part of medical and hospital care.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by W. E. Allen
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman

Houghton Brownlee
Ben Harrison
Arthur Sandlin
Wayne Rodgers

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant