B. D. HORTON, d/b/a Embers Club, et al., Appellants,

v.

Kenneth W. COOK, Administrator, Texas Alcoholic Beverage Commission, et al., Appellees.

No. 12401.

Court of Civil Appeals of Texas, Austin.

June 9, 1976.

Rehearing Denied June 30, 1976.

Lee Mahoney, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellants.

John L. Hill, Atty. Gen., R. L. Lattimore, Asst. Atty. Gen., Austin, for appellees.

O'QUINN, Justice.

Appellants brought this suit under authority of Article 1.05, Taxation-General (Title 122A, V.T.C.S.), to recover taxes paid under protest and as a class action attacking validity of Article 666–20d (Texas Penal Code) which levies a tax on gross receipts of certain permittees from sale of mixed alcoholic beverages.[1]

Trial in district court was without aid of a jury, and the trial court entered judgment that appellants, as plaintiffs below, take nothing by their suit. We will affirm the judgment of the trial court.

Appellants bring three points of error under which they contend in the main that the statute imposing the gross receipts tax

1. Appellants are B. D. Horton, doing business as Embers Club of Corpus Christi, Nueces County; George Travis Williams, doing business as Penthouse Cocktail Lounge of Corpus Christi, Nueces County; Flying Tiger, a partnership composed of Alvin Candela and Celia Candela of Galveston, Galveston County; and Henry P. Tilley, Jr., doing business as Caravan Club of Nacogdoches, Nacogdoches County, acting individually and in behalf of the class of taxpayers similarly situated. Appellees, defendants below, are Kenneth W. Cook, Administrator, Texas Alcoholic Beverage Commission; Jesse James, Treasurer of the State of Texas; and John L. Hill, Jr., Attorney General of the State of Texas.

is "discriminatory and unconstitutional" and that the "classification for purposes of taxation has no reasonable basis in the nature of the business classified." Although reference is not made to provisions of the Constitution relied on, it is inferred from argument that appellants attack validity of the statute for claimed failure to meet the requirements of equality and uniformity. (Tex.Const. Art. VIII, secs. 1 & 2).

Appellants and the class they purport to represent are engaged in the business of selling "mixed drinks" containing alcohol. The Legislature was not authorized to enact laws authorizing that business until November of 1970, when the electorate adopted an amendment to the Constitution, which provided: "The Legislature shall have the power to enact a Mixed Beverage Law regulating the sale of mixed alcoholic beverages on a local option election basis." (Tex. Const. Art. XVI, sec. 20, adopted Nov. 3, 1970).

Thereafter in 1971, the Legislature amended the Texas Liquor Control Act of 1935 to authorize sale of mixed alcoholic beverages and impose on mixed beverage and private club permittees a "tax at the rate of ten percent (10%) . . . on the gross receipts of a permittee from the sale, preparation, or service of mixed beverages, or from the sale, preparation, or service of ice or nonalcoholic beverages which are sold, prepared, or served for the purpose of being mixed with alcoholic beverages and consumed on the premises of the permittee."

The factual basis from which appellants make their attack is that under the legislative Act two types of permittees were authorized to sell alcoholic drinks, with one being taxed on gross receipts and the other not taxed on gross receipts. Appellants argue that because Mixed Alcoholic Beverage Permittees, the class in which they operate, are taxed at a rate of ten percent on gross receipts, the tax is discriminatory and unconstitutional, since Wine and Beer Retailer Permittees, who also sell drinks containing alcohol, are not required to pay a gross receipts tax. "The basis for such contention," appellants say, "is that wine and beer retail permittees sell the same products (ethanol), are not taxed on the gross receipts for sale of such products and there is, therefore, no uniformity or equality among the members of the same class."

The statute limits sales by "wine and beer" permittees to vinous or malt fermented liquor containing no more than 14 percent alcohol by volume. Purveyors of "mixed drinks" are permitted to sell beverages of unlimited alcoholic content. Appellants argue that since all alcoholic beverages contain the same substance, ethyl alcohol, known chemically as ethanol, both "beer and wine" permittees and "mixed beverage" permittees are selling the same basic substance. Therefore, appellants conclude, ". . . any attempt to classify ethyl alcohol (ethanol) from the standpoint of chemical composition would be purely arbitrary since it is all ethyl alcohol which is a classification made for purposes of distinguishing a particular one of the alcohols, to wit: the alcohol used in alcoholic beverages."

We are unable to find merit in the ground for the attack or the arguments advanced in support of the attack. We do not understand the basis for the two classifications arrived at by the Legislature to be strictly the quantum of alcoholic content, although the line between "wine and beer" purveyors and the unlimited "mixed beverage" operators appears to be at the level of 14 percent of alcohol by volume. The real and most obvious difference we perceive between the two classes is that the "mixed drink" permittees are authorized to sell across the entire spectrum of alcoholic products, from beers and "unfortified" wines, across ports, sherries, apertif, vermouth, and other "fortified" wines, to brandies, rums, vodkas, gins, tequilas, and whiskies; whereas "beer and wine" permittees are limited to sale of beers and "unfortified" wines, none of which may exceed 14 percent in alcoholic content by volume.

Prior to amendment of the Constitution in 1970, and the subsequent action of the Legislature under that authority, the

"mixed drink" class did not and could not lawfully exist, although the "beer and wine" class had been in existence, substantially as now, beginning about 1935. The "mixed drink" occupation was created by the Legislature in response to mandate of the people for a new type of business, set up to mix and serve all kinds of alcoholic beverages.

The Supreme Court in 1907 held that upon reasonable grounds merchants, whether wholesalers or retailers, ". . . may be further divided according to the particular classes of business in which they may engage. The considerations upon which such classifications shall be based are primarily *within the discretion of the Legislature.* The courts, under the provisions relied on, can only interfere when it is made *clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified,* and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. *This is the rule in applying both the state and federal Constitutions,* and it has been so often stated as to render unnecessary further discussion of it." (Emphasis added) *Texas Co. v. Stephens,* 100 Tex. 628, 647, 103 S.W. 481, 485 (1907).

The rule in *Stephens* was later applied in holding valid the chain store tax, and even though the classification inherently contained "some element of arbitrariness," the Court said, "To strike down the act we must hold that the Legislature acted arbitrarily or capriciously." *Hurt v. Cooper,* 130 Tex. 433, 110 S.W.2d 896, 903 (Tex. Comm'n App.1937, opinion adopted). "The lines must be drawn somewhere," the Court concluded, "and the authorities . . . hold that the *determination of where to draw them is for the Legislature and not for the courts.*" (Emphasis added) (110 S.W.2d 903)

In the Act under consideration the Legislature drew the line between "wine and beer" permittees and "mixed beverage" bars upon the basis of alcoholic content of the beverages sold by each of the two classes. The line thus drawn appears to be at approximately the maximum limit for "beer and wine" purveyors prior to 1971, when the "mixed beverage" classification came into being.

The principal purpose of the Texas Liquor Control Act is to regulate the sale of ethanol, or ethyl alcohol, and to levy taxes in connection with such regulation of the industry. The ethyl alcohol thereby regulated is not raw, unclothed ethyl. Ethyl, in unnumbered spirits, moves about, clothed in various bewitching garments, giving off differing bouquets, and offering an almost unlimited range of fetching tastes. Classifications within the scope of the Act are logical and to be expected.

In classifying the "mixed drink" business, the Legislature reasonably must have visualized the type of operation in which trained bartenders would be able to devise palatable beverages of all kinds, in satisfaction of varying tastes, ranging from Bourbon or Scotch "on the rocks" to Ramos gin fizzes and Margaritas. Bourbon would be spelled "whiskey" and Scotch would be "whisky," the alcoholic content might be near the same, but to the customer taste would spell the difference. Canadian would be "whisky" and Irish (Bless the Ould Sod!) would be "whiskey" ("uisgebeatha," water of life), the level of ethanol probably the same, but again taste would dictate the drink ordered, not vapid ethanol alone. Even different brands, being available at this type of business, would determine the drink some customers might order. A man with discriminating taste would ask for "Fitz on the rocks" or "Beefeater Martini, dry," or his companion, equally discriminating, might ask for "unblended Scotch" or "straight whiskey," meaning in each instance a whisky, or whiskey, as the case may be, from one still and not a blend of products from a number of stills. Some would prefer blended brands, either Bourbon or Scotch, and find themselves asking for "Walker's De Luxe" or "J. & B." The man with an ulcer, wanting to be sociable,

might simply whisper to the waiter, "Slip me a Shirley Temple, but cut the garbage."

It is within our scope and not unseemly for the court to notice that the "mixed beverage" bars and the "beer and wine" establishments, as devised by legislative mandate, are as different as East and West, and "never the twain shall meet." In "beer and wine" places the customer finds beer and tacos, wine and cheese, with country music, where some patrons may bring their own liquor, clutched in a brown paper bag, and order setups and mixers to create their own "mixed beverages," without benefit of the bartender's professional touch. The public, since 1971, has had two general choices to exercise in selecting a public place to drink, and choice is made according to passing taste or particular mood. Each classification has its own atmosphere, decor and music, its own advantages, its separate pleasures, which things alone tend to justify the difference in classification.

Appellants concern themselves with ethanol, common to all alcoholic beverages, without regard to the obvious differences between the two classes of business dispensing alcoholic drinks. The subject of classification in *Hurt v. Cooper, supra,* was stores selling merchandise, with the tax levied upon "the chain store method of merchandising." Similarly, in *Calvert v. American International Television, Inc.,* 491 S.W.2d 455 (Tex.Civ.App. Austin 1973, no writ), television stations and theaters were handling the same product, motion picture films, yet the operations of the two businesses were sufficiently different to justify separate classification. In *American Transfer and Storage Co. v. Bullock,* 525 S.W.2d 918 (Tex.Civ.App. Austin 1975, writ ref.), the subject of taxation was packing and packaging materials. The difference in the two types of operations lay in part in the time and method of recouping the cost of such materials, used in sales or rendering of services.

The fact that "mixed beverage" bars may also sell beer and wine containing less than 14 percent alcohol is not fatal to validity of the Act. In *Hurt* it was pointed out that

"From the very nature of the act of classification there inheres in it some element of arbitrariness." In *Stephens* it was said, "The mere fact that discrimination is made proves nothing against a classification which is not, on its face, an arbitrary, unreasonable, or unreal one."

Appellants have failed under their burden to demonstrate that the classifications resulting from the Act, as amended in 1971, result in discriminations and unequal treatment sufficient to invalidate the statute. We hold the statute not in violation of the requirements of equality and uniformity under sections 1 and 2, Article VIII, of the Constitution of Texas. This construction upholds the Act and should be applied rather than a construction that might invalidate the statute.

The judgment of the trial court is affirmed.

Affirmed.