DANCETOWN, U. S. A., INC. d/b/a Dance-
town, U. S. A., et al., Appellants,

v.

The STATE of Texas, Appellee.

No. B–1134.

Supreme Court of Texas.

Feb. 5, 1969.

**334**

Bernard & Bernard, D. R. Bernard, Houston, for appellants.

Crawford C. Martin, Atty. Gen., Robert B. Davis and Alan H. Minter, Asst. Attys. Gen., Austin, for appellee.

WALKER, Justice.

This is a direct appeal under the provisions of Article 1738a, Vernon's Ann.Tex. Civ.St. Suit was filed by the State of Texas against Dancetown, U.S.A., Inc., and others to recover unpaid admissions taxes, penalties and interest alleged to be owing under the provisions of Articles 21.02 to 21.04, inclusive, V.A.T.S. Tax.–Gen. Two of the defendants have operated a ballroom in Houston for several years. The tax is imposed upon them by Paragraph 4 of Article 21.02. Defendants attacked this and other related statutes on various constitutional grounds. The trial court granted a temporary injunction restraining defendants from operating the ballroom pending final hearing of the case, and the defendants duly perfected their appeal to this Court.

Appellants' primary contention is that Articles 21.01 and 21.02 violate Article VIII, Section 2, of the Texas Constitution, Vernon's Ann.St., which requires that "occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax," and denies them the equal protection of the law in violation of the Fourteenth Amendment to the Constitution of the United States. The material provisions of the two statutes are quoted in the margin.[1]

I. Art. 21.01 Reports Required

Every person, firm, association of persons, or corporation owning or operating any place of amusement which charges a price or fee for admission, including exhibitions in theaters, motion picture theaters, opera halls, and including horse racing, dog racing, motorcycle racing, automobile racing, and like contests and exhibitions, and including dance halls, night clubs, skating rinks, and any and all other places of amusements not prohibited by law, shall file with the Comptroller a quarterly report on the twenty-fifth day of January, April, July and October for the quarter ending on the last day of the preceding month; said report shall show the gross amount received and the price or fee for admission; * * *.

Art. 21.02 Tax Imposed

(1) There is hereby levied a tax of one cent (1¢) on each ten cents (10¢) or fractional part thereof paid as admission to entertainments such as motion pictures, operas, plays and like amusements held at places other than at a fixed and regularly established motion picture theater, where the admission charged is in excess of fifty-one cents (51¢) per person.

(2) There is hereby levied on each admission to entertainments such as motion pictures, operas, plays and like amusements held at a fixed or regularly established motion picture theater, where the admission charged is in excess of One Dollar and Five Cents ($1.05) and not more than One Dollar and Fifteen Cents ($1.15) a tax of one cent (1¢) ; and where the admission charged is in excess of One Dollar and Fifteen Cents ($1.15) a tax

Appellants recognize the power of the Legislature to classify the subjects of occupation taxes and impose varying burdens on the different groups. They say that in this instance, however, Article 21.01 creates but one classification, i. e. "any place of amusement which charges a price or fee for admission." After the Legislature has thus established a single classification, appellants argue, any attempt to impose a different tax upon various members of the class is unconstitutional and void. We do not agree.

A somewhat similar contention was made in Texas Company v. Stephens, 100 Tex. 628, 103 S.W. 481. The statute there in question required every pipeline company to file reports showing, and pay a tax upon, gross receipts from services rendered to others. It then required each company engaged in conveying oil to report as part of its gross receipts, upon which the tax was calculated, not only the amount received for services rendered to others but also the cost of transporting its own oil. Other pipeline companies, which were subject to the reporting requirements of the same section, were not taxed upon the cost of transporting their own products. Acts 1905, 29th Leg., p. 358, ch. 148, § 12. In holding that this did not render the statute unconstitutional, the Court stated:

"The fact that all persons, etc., owning or controlling pipe lines are included in the first part of the section and are taxed as a class does not, as plaintiff's counsel seem to argue, preclude further classification, and the application of differing rules among them. That is what is done, in effect, by the provision in question when it makes a special rule applicable only to those transporting oil, and the contention, if all the necessary facts were shown, would come back to the question as to whether or not such classification is based upon some real difference between the businesses or is arbitrary and capricious merely. We cannot say, as the cause is presented to us, that the business of piping oil partly for the public and partly for the owner of the line does not differ so substantially from the businesses of so transporting the other things as to furnish reason for the application of different rules as to them."

Here the Legislature has provided in Article 21.01 that every person operating any place of amusement which charges for admission shall, with certain exceptions, file reports and pay a tax in rates and amounts as thereinafter provided. Article 21.02 then divides places of amusement into several categories and prescribes the tax applicable to each category. This is the classification created by the Legislature, and the ultimate inquiry is whether the same is reasonable or arbitrary and capricious.

The leading Texas case dealing with occupation taxes is Texas Company v.

---

of two cents (2¢) plus one cent (1¢) on each ten cents (10¢) or fractional part thereof in excess of One Dollar and Twenty-five Cents ($1.25).

(3) There is hereby levied a tax of one cent (1¢) on each ten cents (10¢) or each fractional part thereof paid as admission to horse racing, dog racing, motorcycle racing, automobile racing, and like mechanical or animal contests and exhibitions.

(4) There is hereby levied a tax of one cent (1¢) on each ten cents (10¢) or a fractional part thereof paid as admission to dance halls, night clubs, skating rinks, and any and all other like places of amusements, contests, and exhibitions where the admission charged is in excess of fifty-one cents (51¢).

(5) There is hereby levied on the amounts paid for admission by season ticket, subscription, or lease for admission to any place of amusement, a tax equivalent to ten per centum (10%) of the amount paid therefor, provided a single admission to the place of amusement would be subject to taxation under the foregoing provisions.

\*     \*     \*     \*     \*

Stephens, supra. We quote further from the opinion in that case:

"The very language of the Constitution of the state implies power in the Legislature to classify the subjects of occupation taxes and only requires that the tax shall be equal and uniform upon the same class. Persons who, in the most general sense, may be regarded as pursuing the same occupation, as, for instance, merchants, may thus be divided into classes, and the classes may be taxed in different amounts and according to different standards. Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage. The considerations upon which such classifications shall be based are primarily within the discretion of the Legislature. The courts, under the provisions relied on, can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. This is the rule in applying both the state and federal Constitutions, and it has been so often stated as to render unnecessary further discussion of it."

■ In Calvert v. McLemore, 163 Tex. 562, 358 S.W.2d 551, we held that Paragraph 1 of Article 21.02 is unconstitutional. This was on the ground that there is no material difference between the business of exhibiting motion pictures, operas or plays at a fixed and regularly established motion picture theater and the business of providing the same entertainment at some place other than a fixed and regularly established motion picture theater. From a reading of the statutes and in view of the severability clause enacted as part of Title 122A, Taxation-General, it is our opinion that the invalidity of Paragraph 1 does not affect the other provisions of Articles 21.01 and 21.02. See Acts 1959, 56th Leg. 3rd C.S., p. 187, ch. 1, § 5.

With Paragraph 1 eliminated from Article 21.02, the entertainment business is there divided, with respect to the tax required to be paid on single admissions, into three principal classes and each class is taxed on a different basis. These classes are: *Paragraph 2*: entertainments such as motion pictures, operas, plays and like amusements held at a fixed and regularly established motion picture theater; *Paragraph 3*: horse racing, dog racing, motorcycle racing, automobile racing and like mechanical or animal contests and exhibitions; and *Paragraph (4)*: dance halls, night clubs, skating rinks, and other places of amusements, contests and exhibitions. Every place of amusement is then taxed by Paragraph 5 at a flat rate of ten per cent of the amount paid for admission by *season ticket, subscription or lease for admission* provided a single admission would be taxable under the other provisions of the statute. Appellants say that Paragraph (4) is unconstitutional not only because a different tax rate and exemption applies to the owners and operators of Paragraph 2 establishments, but also because the same place of business will be required to pay a different rate depending upon whether it operates under Paragraph 4 or Paragraph 5.

■ The statute does operate unequally upon the several classes, but the power of the Legislature to classify for purposes of taxation is quite broad. Differences in the commodities sold or services rendered are generally regarded as a proper basis for classification in the absence of any showing to the contrary. In Hurt v.

Cooper, 130 Tex. 433, 110 S.W.2d 896, we pointed out that:

> "It would not be argued that the Legislature is without power to levy a tax upon dry goods merchants without at the same time levying a like tax upon grocery merchants. The fact that the merchants not taxed, or those exempted from the tax, sell a different kind of goods from those which are taxed, is an all-sufficient justification of the classification or exemption. This is well established."

The following statutes have been upheld against contentions that they did not operate equally upon all members of the same class: an act levying a higher gross receipts tax upon wholesale dealers in petroleum products than upon wholesale dealers in other commodities, Texas Company v. Stephens, supra; an ordinance requiring payment of a permit fee amounting to two per cent of the gross receipts from vehicles transporting passengers for hire but not imposing a similar burden upon operators of vehicles transporting freight for hire, Reed v. City of Waco, Tex.Civ. App., 223 S.W.2d 247 (wr. ref.); a statute levying an occupation tax on anyone owning or operating a nine or ten pin alley that was not coin operated, Youle v. Calvert, Tex.Civ.App., 348 S.W.2d 534 (wr. ref. n. r. e.); a statute levying an occupation tax upon the owners, managers and exhibitors of coin operated machines of every kind but exempting pay telephones, gas meters, pay toilets and sanitary cup vending machines, Ex parte Day, 127 Tex. Cr.R. 367, 76 S.W.2d 1060; a statute imposing an occupation tax on the operation of coin vending machines of every kind but exempting pay telephones and gas meters, Ex parte Walker, 121 Tex.Cr.R. 145, 52 S.W.2d 266; an order of the commissioners court levying an occupation tax on peddlers of patent medicine but not taxing merchants and druggists selling the same medicine in the same county, South v. State, 72 Tex.Cr.R. 381, 162 S.W. 510.

See also 1 Cooley on Taxation, 4th ed. 1924, § 353.

■ The members of each class into which the amusement business is now divided obviously differ from the members of every other class in their methods and places of operation and in the nature of the entertainment generally offered. Each class seems to embrace every enterprise that should reasonably be included in the same category. Since appellants have not demonstrated by proof or otherwise that "there is no real difference to justify the separate treatment undertaken by the Legislature," we cannot say on the present record that the classification is so arbitrary and unreasonable as to render the statutes unconstitutional.

■ Paragraph (5) of Article 21.02 applies to all places of amusement. The rate there imposed with respect to amounts paid for admission by season ticket, subscription, or lease, provided a single admission to the establishment would be subject to taxation under the other provisions of the statute, appears to be entirely reasonable. We are not entirely clear as to how the cost of a single admission will be determined when admission to a particular exhibition is by season ticket only, but that problem is not presented or considered here. Even if the effect and application of Paragraph (5) were so uncertain as to render the same invalid, that would not affect the remainder of the statute. Although appellants argue to the contrary, it is our opinion that no conflict or ambiguity arises from the provisions exempting the operator of a Paragraph (2) establishment from filing a report when the admission charged is less than $1.01 and exempting the same operator from paying a tax on the first $1.05 charged for admission.

Finally, appellants contend that Article 21.04, which authorizes the injunctive relief granted in this case, is unconstitutional

in that they have been deprived of their property without due process of law. They point out that the operation of their business has been enjoined without a final hearing to determine whether they are subject to the tax or to the requirement for filing reports. They also say that the Legislature could have "complied with the Constitutional requirements by providing for such safeguards as injunctions requiring the alleged tax to be set aside in escrow or in some other similar manner."

■ According to the allegations of the petition, no taxes have been paid on appellants' operations since 1965. They were given a hearing before the temporary injunction was issued, and the trial court determined that they had failed to "file reports and pay taxes due to the State of Texas * * * though repeated demands have been made upon defendants" therefor. There is no contention here that the issuance of the injunction constitutes an abuse of discretion or is without support in the evidence. As for the argument that appellants should not be compelled to do more than put into escrow the amount of tax alleged to be owing, they might have avoided the injunction by promptly paying the taxes under protest as authorized and required by Article 7057b, V.A.T.S. Suit could then have been filed for recovery of the amount paid plus interest, and all questions affecting their liability would have been determined in that proceeding. By not availing themselves of this remedy, they risked the issuance of an injunction. They may have elected to assume that risk in the belief that they would be able to suspend the injunction by filing a supersedeas bond, as was done in this case. The issuance of the temporary injunction does not deprive them of their property without due process of law.

The judgment of the trial court is affirmed.