Bob **BULLOCK**, Comptroller of Public Accounts, et al., Appellants,

v.

**TEXAS SKATING ASSOCIATION** et al., Appellees.

Bob **BULLOCK**, Comptroller of Public Accounts, et al., Appellants,

v.

**ESCOBEDO ENTERPRISES, INC.**, d/b/a Bridgeport Ballroom, Appellees.

Nos. 12894, 12900.

Court of Civil Appeals of Texas, Austin.

June 13, 1979.

Rehearing Denied July 11, 1979.

John L. Hill, Atty. Gen., Austin, for appellants in both cases.

R. L. Lattimore, Asst. Atty. Gen., Austin, for appellants in 12894.

Myra A. McDaniel, Asst. Atty. Gen., Austin, for appellants in 12900.

Donald W. Ray, Ray & Wood, Austin, for appellees in 12894.

George G. Potts, Claude R. Wilson, Jr., H. David Herndon, Golden, Potts, Boeckman & Wilson, Dallas, for appellee in 12900.

O'QUINN, Justice.

Appeals in these two causes, on motion of appellee in Cause No. 12,900, were consolidated and heard for submission and oral argument on the same day. Both suits attack validity of admission taxes levied under Article 21.02, Title 122A, Taxation-General, V.A.T.S.

Escobedo Enterprises, Inc., doing business as Bridgeport Ballroom, went to trial in district court on its Fifth Amended Petition in Cause No. 12,900. This plaintiff brought suit under Article 1.05, Title 122A, Taxation-General, to recover admission taxes, paid under protest, on its operation of a ballroom during specified tax periods of 1976 and 1977. The principal basis for protest was the claimed invalidity of Article 21.02(4) because it was in violation of provisions of the Constitution of Texas and of the Constitution of the United States.

After trial before district court without a jury, the court found that Article 21.02(4), levying admission taxes on dance halls, night clubs, and other like places of amusement, violated Sections 1 and 2, Article VIII, of the Constitution of Texas and the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The court awarded Escobedo Enterprises recovery of $4,366.40 in taxes paid under protest.

We will reverse judgment of the trial court and render judgment that Escobedo Enterprises take nothing by its suit.

Texas Skating Association, Luther Bernstein and Ernest L. Pruett, appellees in Cause No. 12,894, brought their suit in 1974 as a class action ". . . on behalf of themselves and others similarly situated who are owners of roller skating rinks located in the State of Texas." The principal complaint made by plaintiffs, as operators of *roller skating rinks*, is grounded on a claim that the statute "is arbitrary and discriminatory in that *roller derby contests* [emphasis added] are operated as businesses in substantially the same manner in which said plaintiffs operate," and are not included in the tax statute.

The State contended below and contends on appeal that plaintiffs in this suit failed to obtain legislative consent to sue the State and may not maintain this action without consent, granted either by specific or general permission of the Legislature.

Trial before district court resulted in conclusion of the trial court that Article 21.-02(2) "is violative of Article VIII, Section 2, of the Constitution of Texas" and therefore "held to be unconstitutional, void and of no force and effect."

We will reverse judgment of the trial court and render judgment that plaintiffs take nothing by their suit.

The main thrust of the taxpayers' attack on validity of the admissions tax statutes stems from the legislative history of Article 21.02 and case law affecting the statute from its inception to the present time.

Admissions taxes in general were levied initially by statute in 1936 with passage of certain "omnibus tax measures" to ". . . provide, in part, for payment of old age assistance benefits . . ." (Acts 1936, 44th Leg., 3rd C.S., p. 2040, ch. 495, Article III, sec. 6, eff. Oct. 31, 1936). From the Act of 1936 the present admissions tax statutes were codified in 1959 under Chapter 21 of Title 122A, Taxation-General. (Acts 1959, 56th Leg., 3rd C.S., p. 187, ch. 1).

Article 21.01 and its predecessor statutes provided that every person, firm, association, or corporation owning or operating any place of amusement charging an admission price, including certain specified types

of such places, "shall file with the Comptroller" certain reports and pay to the Treasurer "a tax in rates and amounts as hereinafter provided." The taxes referred to in Article 21.01 are imposed under provisions of Article 21.02, which, as enacted in 1959 and amended through 1969, provided in the sections pertinent to issues in these appeals the following:

"(1) There is hereby levied a tax of one cent (1¢) on each ten cents (10¢) or fractional part thereof paid as admission to entertainments such as motion pictures, operas, plays and like amusements held at places other than at a fixed and regularly established motion picture theater, where the admission charged is in excess of fifty-one cents (51¢) per person.

(2) There is hereby levied on each admission to entertainments such as motion pictures, operas, plays and like amusements held at a fixed or regularly established motion picture theater, where the admission charged is in excess of One Dollar and Five Cents ($1.05) and not more than One Dollar and Fifteen Cents ($1.15) a tax of one cent (1¢); and where the admission charged is in excess of One Dollar and Fifteen Cents ($1.15) a tax of two cents (2¢) plus one cent (1¢) on each ten cents (10¢) or fractional part thereof in excess of One Dollar and Twenty-five Cents ($1.25).

(3) There is hereby levied a tax of one cent (1¢) on each ten cents (10¢) or fractional part thereof paid as admission to horse racing, dog racing, motorcycle racing, and like mechanical or animal contests and exhibitions, except automobile racing.

(4) There is hereby levied a tax of one cent (1¢) on each ten cents (10¢) or a fractional part thereof paid as admission to dance halls, night clubs, skating rinks, and any and all other like places of amusements, contests, and exhibitions where the admission charged is in excess of fifty-one cents (51¢)."

In 1962 the Supreme Court held that levy of a tax on admissions to places "other than at a fixed and regularly established motion picture theater," when admission exceeded fifty-one cents per person, was not a reasonable and valid classification when compared to no tax levied on entertainments at *regularly established theaters* unless the amount charged exceeded $1.05. *Calvert v. McLemore*, 163 Tex. 562, 358 S.W.2d 551 (1962). Thereafter district courts in Travis County, in cases not appealed, held that the levy on regularly established motion picture theaters was discriminatory and therefore invalid under the reasoning in *McLemore.* The Supreme Court pointed out in *McLemore*, "It is essential . . . that there be a reasonable basis for the classification," but the classification by which the Legislature sought to make a difference between "the same picture or play" exhibited to similar audiences in *regularly established theaters* and in places *other than established* motion picture theaters constituted ". . . discrimination is too plain to admit of argument . . ." (358 S.W.2d 553). The place of exhibition did not justify the classification.

In 1975 the Legislature amended paragraphs (2), (3), and (4) of Article 21.02. We are concerned here only with amendments to paragraphs (2) and (4), the net effect of which was to transfer skating rinks from paragraph (4) to paragraph (2), leaving the stated subjects in paragraph (4) as dance halls, night clubs, and any and all other like places of amusements, contests and exhibitions. (Acts 1975, 64th Leg., p. 2307, ch. 719, eff. Sept. 1, 1975). By such transfer the Legislature applied a tax rate to skating rinks different from the rate theretofore applied.

Escobedo Enterprises argues at length that as paragraph (4) of Article 21.02 now stands, ". . . it taxes virtually only one amusement—ballrooms—when it was intended to tax *all* amusements and, therefore, is unreasonable, arbitrary and discriminatory." (Emphasis by taxpayer). It is argued that the statute therefore violates Article VIII, Sections 1 and 2, of the Constitution of Texas and contravenes the equal protection clause of the Fourteenth Amendment to the Constitution of the United

States. Section 1 of Article VIII requires that taxation be "equal and uniform," and Section 2 prescribes that "[a]ll occupation taxes shall be equal and uniform."

We regard it as well established in law that various businesses or occupations, such as in this case amusements, may be further divided by the Legislature for tax purposes according to the particular classes of amusements in which they engage. That principle was stated by the Supreme Court as early as 1907 in *Texas Co. v. Stephens*, 100 Tex. 628, 103 S.W. 481, 485 (1907). "The considerations upon which such classifications shall be based," the Supreme Court stated, "are primarily within the discretion of the Legislature. The courts, under the provisions relied on, can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the business classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. This is the rule applying both to state and federal Constitutions, and it has been so often stated as to render unnecessary further discussion of it." (103 S.W. 485).

The principles found in *Stephens* were applied later in sustaining the chain store tax, and even though the classification inherently contained "some element of arbitrariness," the Court stated, "To strike down the act we must hold that the Legislature acted arbitrarily or capriciously." *Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896, 903 (Tex.Comm'n App.1937, opinion adopted). The Court concluded: "The lines must be drawn somewhere, and the authorities above cited hold that the determination of where to draw them is for the Legislature and not for the courts." (110 S.W.2d 903).

Escobedo Enterprises insists that the tax on admissions to ballrooms is invalid because the Legislature failed to tax all amusements, even though by general language in Article 21.01 the Legislature spoke of "every person," or other entity, required to file certain reports with the Comptroller, and thereafter in Article 21.02 specified only certain named amusements out of the myriad of amusements which might be taxed. This argument fails under the rule of *Stephens*, that "The mere fact that discrimination is made proves nothing against a classification which is not, on its face, an arbitrary, unreasonable, or unreal one." (103 S.W. 485). The Supreme Court of the United States stated in 1937, "A legislature is not bound to tax every member of a class or none." *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937). The Supreme Court of Texas rejected contention of the taxpayer in 1969 that since Article 21.01 created but one classification ["any place of amusement which charges a price or fee for admission"] any attempt by the Legislature thereafter to impose a different tax upon various members of the amusements class would be unconstitutional and void. *Dancetown, U. S. A., Inc. v. State*, 439 S.W.2d 333, 335 (Tex.Sup.1969). The contention thus made by Escobedo Enterprises is overruled as without merit.

It is also contended by the taxpayer that to tax skating rinks at a rate lower than the tax rate on ballrooms constitutes discrimination. We have examined the record with care and we conclude that Escobedo Enterprises has failed under its burden to demonstrate that the classification of ballrooms under Article 21.02(4), at one tax rate and skating rinks under paragraph (2) of the statute at a lower rate, results in discrimination and unequal treatment sufficient to invalidate the statute. The Supreme Court of the United States stated the rule, also applied by the courts of this state, that, "The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940).

The reasoning behind this principle is more fully developed in this Court's opinion in *American Transfer and Storage Company v. Bullock*, 525 S.W.2d 918, 924–926 (Tex. Civ.App. Austin 1975, writ ref'd). There it was pointed out that in *Madden*, the Su-

preme Court observed that, "'. . . in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.'"

We have no difficulty in perceiving differences between ballrooms and skating rinks to constitute a valid basis for separate classifications by the Legislature. Escobedo Enterprises contends that the Legislature, in moving skating rinks in 1975 from prior classification and an identical tax rate with ballrooms to a separate classification and a lower tax rate, created an arbitrary and unreasonable classification in violation of constitutional safeguards against unequal treatment.

The record shows that the Legislature might reasonably have determined in 1975 that the characteristics of skating rinks had changed sufficiently since 1936 to justify a different and lower rate for skating rinks which would be more equitable. Evidence was introduced showing that skating rinks two to three decades prior to 1975 drew their patronage in the main from young adults, whereas in more recent years youngsters of preschool age through junior high school age are the principal patrons. Hours and days of operation have changed to accommodate the younger groups. The principal competition of skating rinks in recent years comes from carnivals, movies, and football games, certainly not from night clubs and ballrooms. An amusement shown to be a favorite with school children, where, as in this record, it is shown that the skating rinks on occasions are rented for private parties, principally by churches, where alcoholic beverages are not served and drinking is discouraged, is an amusement so plainly distinguishable from ballrooms and nightclubs, a matter adult citizens, including judges of courts, are able to notice without extensive proof, that the essential difference becomes sufficiently apparent to nega-

tive any claim of unreasonable and arbitrary classification. The Supreme Court observed in *Dancetown*, "The statute [Article 21.02] does operate unequally upon the several classes, but the power of the Legislature to classify for purposes of taxation is quite broad."

■ We are bound to employ the test that a statute should be deemed constitutional if there is any basis that could have seemed reasonable to the Legislature. *Clark v. Finley*, 93 Tex. 171, 54 S.W. 343, 346 (1899); *Gerard v. Smith*, 52 S.W.2d 347, 350 (Tex.Civ.App. El Paso 1932, writ ref'd); *San Antonio Retail Grocers v. Lafferty*, 156 Tex. 574, 297 S.W.2d 813, 815 (1957). Summaries of other decisions in which classification of business and occupations has been considered by Texas courts are to be found in *Dancetown*, 439 S.W.2d 337, col. 1; and in *Horton v. Cook*, 538 S.W.2d 221, 224, col. 1 (Tex.Civ.App. Austin 1976, writ ref'd n. r. e.).

Escobedo Enterprises further urges that those portions of Article 21.02 remaining after other parts were held to be unconstitutional are not properly severable and cannot be regarded as valid because their survival alone was not intended by the Legislature. The Act by which Article 21.02 came into being as law contained a severability clause, which the Supreme Court has recognized as an important factor, although "by no means all-controlling." *Harris County Water Control and Improvement District v. Albright*, 153 Tex. 94, 263 S.W.2d 944, 947 (1954). In that case the test stated is that the remaining portion of the statute will be held separable ". . . unless it appears that the legislature would not have enacted the section without the offending provision, or that the remainder does not present an independent, complete and workable whole without it." (263 S.W.2d 947, col. 1).

■ We find this contention of the taxpayer without merit. Article 21.02 was reviewed by the Supreme Court in *Dancetown*, where a similar contention was made, and long after the Court had held part of the statute unconstitutional in *Calvert v.*

*McLemore, supra.* Upon examining the remaining portions of the statute, the Court in *Dancetown* said, "From a reading of the statutes and in view of the severability clause enacted as part of [the Act] . . . it is our opinion that the invalidity of Paragraph 1 does not affect the other provisions or Articles 21.01 and 21.02." (439 S.W.2d 336). To this the Court later added, "Even if the effect and application of Paragraph (5) were so uncertain as to render the same invalid, that would not affect the remainder of the statute." (439 S.W.2d 337, col. 2).

On appeal Escobedo Enterprises filed its motion to dismiss the appeal by the State on the ground that the Attorney General brought the appeal "against the instructions of the Comptroller . . . and the Attorney General refuses to dismiss the Appeal even though instructed to do so by the Comptroller . . ." We dismiss the motion as without merit.

The Attorney General is a defendant in suits of this type in the same manner that the Comptroller and the Treasurer are jurisdictional parties, although the State of Texas is the actual party in suit to recover taxes. Escobedo Enterprises argues that the Comptroller, in the exercise of his administrative duties, such as tax refunds, can bring litigation to a halt at any time. In this suit the Comptroller obviously exercised his administrative discretion and rejected request for refund of taxes paid under protest; otherwise there would have been no litigation. Thereafter, upon filing of suit, the Comptroller's statutory powers ended. In matters of litigation the Attorney General is the officer authorized by law to protect the interests of the State, and even in matters of bringing suit the Attorney General "must exercise judgment and discretion, which will not be controlled by other authorities." *Charles Scribner's Sons v. Marrs,* 114 Tex. 11, 262 S.W. 722, 727 (1924); *Lewright v. Bell,* 94 Tex. 556, 63 S.W. 623 (1901). It was within discretion of the Attorney General, not that of the Comptroller, to decide whether to appeal a case in which the State had experienced an adverse judgment in the trial court. In

such matters the Attorney General, not the Comptroller of Public Accounts, is authorized to perform the duties of the State's attorney. The motion to dismiss the appeal is overruled.

Having disposed of the issues in Cause No. 12,900 on appeal, we turn to further examination of appeal in No. 12,894, in which Texas Skating Association, Luther Bernstein and Ernest D. Pruett were plaintiffs below and are appellees in this Court.

This action named as defendants three individual public officials who, at the time of filing the petition, held the offices of Comptroller, Treasurer, and Attorney General of the State of Texas, and also are the same officers required to be sued in any suit to recover admissions taxes paid under protest. Thus it appears that plaintiffs sought to bring their action against individual officers, although specifically identified in the petition with the respective offices held by these officials. Such identity as officers of the State was established also by stipulation of the parties in district court.

Plaintiffs went to trial on their First Amended Original Petition, in which they prayed that ". . . the Court decree that Article 21.02(2) . . . is unconstitutional and void in its application to said Plaintiffs in that it invidiously discriminates against Plaintiffs in violation of Article VIII, Sections 1 and 2 of the Texas Constitution . . ." Prior pleadings and prayer for injunctive relief were abandoned.

Defendants excepted to plaintiffs' petition on the ground that on its face the petition showed ". . . that it is a suit brought against the State of Texas, as the real party in interest, without showing permission of the State to be sued."

The record in this case contains no statement of facts. The transcript shows that plaintiffs alleged that the State officers named as defendants ". . . have threatened that any failures of Plaintiffs to comply with reporting, filing and paying taxes imposed . . . will bring down upon plaintiffs action by said defendants in

the courts of . . . Texas to prevent the continuance of business by plaintiffs and for the enforcement of provisions of Art. 21.03 and 21.04 . . . by criminal prosecution."

The stipulations entered into at trial show that the officers who are defendants ". . . in the exercise of governmental authority, are charged with adherence to, and the enforcement, execution, and administration of the taxation laws of the State of Texas." As noted above, plaintiffs abandoned their original pleadings and prayer for injunctive relief against threatened action, if any, by the defendants.

The record does not disclose that plaintiffs as taxpayers complied with statutes requiring payment under protest of taxes due before filing suit. (Arts. 1.05, Title 122A, Taxation-General, and 7057b, V.A.T. S.). Plaintiffs brought this suit, as pointed out earlier, as a class action, on behalf of themselves and others similarly situated who are owners of roller skating rinks. Under Article 7057b, Section 2, as amended in 1939, a class action may be brought under prescribed circumstances, but "A class action shall include any suit filed by any two or more persons, firms, corporations or association of persons *who have paid under protest such taxes* . . ." referred to under Section 1 of the statute. (Emphasis added).

Stipulations of the parties in the main supply facts designed to support the class action nature of this suit by agreement, for example, that there are some 200 owners of roller skating rinks, operating in cities throughout the state, and that the statute complained of applies to them as well as to plaintiffs. The stipulations to some extent describe the characteristics of roller skating rinks and how they operate and, in comparison, the nature and manner of operation of businesses, other than plaintiffs', to "exhibit contests between two professional teams of skaters," known as "roller derby events."

The parties stipulated that "Defendant Bob Bullock does not require owners of roller derby events to report and pay admissions tax when a general admission is charged by a roller derby in excess of $1.05." The parties agree that the Attorney General in a written opinion has held that *roller derby events or contests* are not made taxable under the statute imposing admissions taxes.

■ We are aware of the established case law that suit against the State may not be maintained without consent of the State, granted by its legislative body, either by general law, by resolution, or by bill enacted in specific instances. *State v. Isbell*, 127 Tex. 399, 94 S.W.2d 423 (1936). We conclude that this suit is not an action against the State in the sense prohibited by the settled principle of law that the State may not be sued without its consent.

This is not a suit to impose liability on the State or to compel performance of a contract; it is not in essence a suit to recover money from the State, or by judgment to put a charge upon the treasury of the State; the purpose of this suit is not to control action of the officers acting within powers conferred on them by law, as neither injunctive relief nor mandamus is sought. Nor do the provisions of Article 7057b, V.A.T.S., referred to earlier, furnish an adequate and exclusive remedy. *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712–13 (1945). This is an action in substance to obtain judgment declaring that plaintiffs are wrongfully and without constitutional authority placed under a tax statute which defendants may not lawfully enforce.

A comparable situation was considered by this Court in *Majestic Industries, Inc. v. St. Clair*, 537 S.W.2d 297, 300 (Tex.Civ.App. 1976, writ ref'd n. r. e.), where it was held that it is not a function of the Legislature, by giving or withholding its consent, to determine whether its mandate conforms to the Constitution, but rather that such function rests solely with the courts.

We overrule the contention of appellants that the trial court was without jurisdiction to consider the merits of this case because it is a suit brought against the State without proper consent.

We now consider the merits of the cause which rests mainly on the contention, in brief, that Article 21.02(2) is "violative of Article VIII, Section 2 of the Constitution of Texas." Stated in more detail, the taxpayers contend the statute is void because (1) "of the inadequacy of its own provisions by virtue of inartful and unconstitutional drafting of the major portion of the statute" or (2) "on the theory that the statute discriminates against Appellees because it is incapable of constitutional interpretation and administration because skating rinks and roller derby rinks must fall within the same constitutional classification, yet the clear and plain language of the statute applies the tax only upon skating rinks."

We interpret this language to mean that the taxpayers insist the statute is unconstitutional because (1) all amusements in the state are not taxed but only such amusements as are named in paragraphs (2), (3), (4) of Article 21.02; and because (2) operators of "roller derby contests" were omitted from the statute imposing a tax on roller skating rinks.

For the reasons stated in disposition of Cause No. 12,900 on appeal, we hold that failure to include all amusements in the state within tax provisions of the statute does not render the statute void.

The second ground urged by appellees, that the statute is void because roller derby contests were not included in the statute and taxed equally with roller skating rinks, appears to rest on the further contention that no valid difference exists between the two operations. Stipulations of the parties show that skating rinks are operations in which participants pay to skate and spectators may refrain from skating, or for another fee may also skate; whereas roller derby contests are exclusively for spectators and no persons other than the contestants are permitted to skate. These differences alone would afford sufficient ground for separate classification by the Legislature, and equally permit the inclusion of one business without including the other. This conclusion is based upon reasons already stated in disposition of Cause No. 12,900.

We reverse judgment of the trial court in Cause No. 12,900 on appeal and render judgment that appellee, plaintiff below, take nothing by its suit.

We reverse judgment of the trial court in Cause No. 12,894 on appeal and render judgment that appellees, who were plaintiffs below, take nothing by their suit.