

# THE ATTORNEY GENERAL
# OF TEXAS

June 2, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Toby C. Wilkinson          Opinion No.  JM-913
Hunt County Attorney
P. O. Box 1097                       Re: Constitutionality of
Greenville, Texas  75401             temporary occupation tax
                                     on attorneys (RQ-1347)

Dear Mr. Wilkinson:

     You ask whether a  temporary occupation tax imposed  on
attorneys is constitutional.  We conclude that it is.

     The 70th Legislature enacted a temporary occupation tax
on attorneys to be applied  from January 1, 1988, until  May
31, 1990.  Acts 1987,  70th Leg., 2d C.S.,  ch. 5, art.  IX,
§ 12 at  35; Tax  Code,  §§ 191.141 - 191.145.  The  tax  is
applicable to persons licensed to practice law in Texas, Tax
Code, § 191.141, but it does not apply to:

          (1) an attorney who is 70 years of age  or
     older; or

          (2) an attorney  who has assumed  inactive
     status under rules governing the licensing of
     attorneys.

Tax Code, § 191.144.    Additionally, the  Tax Code  provides
for the proration of the tax due in certain cases:

          If a person is  licensed to practice    law
     after the beginning of  the tax year [June  1
     of one year through  May 31 of the   following
     year] or  resumes active  status to  practice
     law after the beginning of the tax year,  the
     person being  licensed  or  resuming  active
     status shall  pay  the tax  imposed  by  this
     subchapter in  proportion  to the  number  of
     months for which he  will be licensed  during
     that tax year.  If a person is licensed after
     the beginning of a calendar month, the  month
     in which  he is  licensed  shall count  as  a
     month for purposes of payment of taxes. . . .

Tax Code, § 191.143(b).[1]

You ask whether these provisions violate the requirement in article VIII, section 2, of the Texas Constitution that occupation taxes be "equal and uniform upon the same class of subjects within the limits of the authority levying the tax. . . ."

The courts have long concluded that the constitution permits the legislature to levy occupation taxes based on classification schemes established by that body, so long as the legislation is not discriminatory between the same or like classes. In other words, if there is a rational basis for the classification scheme selected by the legislature, the constitutional command that occupation taxes be uniform will be satisfied. The propriety of classification schemes selected is

> primarily within the discretion of the Legislature; and . . . courts can interfere only when it is made clearly to appear that there is no reasonable basis for the attempt-ed classification. If there is a reasonable basis or, to express it differently, it cannot be said that the Legislature acted arbitrarily, the courts will not interfere.

Hurt v. Cooper, 110 S.W.2d 896, 901 (Tex. 1937). See also Bullock v. ABC Interstate Theatres, Inc., 557 S.W.2d 337 (Tex. Civ. App. - Austin 1977, writ ref'd n.r.e.), cert. denied 439 U.S. 894 (1984), and Bank of Texas v. Childs, 615 S.W.2d 810, 815 (Tex. Civ. App. - Dallas 1981, writ ref'd n.r.e.), reversed sub nom. American Bank and Trust Co. v. Dallas County, 463 U.S. 855, reh'g denied, 463 U.S. 1250 (1983).[2]

---

1. The legislature may provide for the pro rata payment of taxes. See generally Attorney General Opinion JM-399 (1985).

2. A classification scheme employed by a state in a tax law will not offend the equal protection clause of the Fourteenth Amendment to the United States Constitution if it is founded on a reasonable distinction or difference in state policy. Kahn v. Shevin, 416 U.S. 351, 355 (1974).

In Attorney General Opinion C-46 (1963), it was held that:

> The mere fact that discrimination is made in classifications for occupation taxes proves nothing against classification which is not on its face an arbitrary, unreasonable or unreal one.

The Texas Supreme Court has noted that this rule "has been stated so often as to render unnecessary any further discussion of it." Texas Co. v. Stephens, 103 S.W. 481, 482 (Tex. 1907). See also 54 Tex. Jur. 2d, Taxation, at section 29. The Texas Supreme Court has written:

> The very language of the Constitution of the state implies power in the Legislature to classify the subjects of occupation taxes and only requires that the tax shall be equal and uniform upon the same class. Persons who, in the most general sense, may be regarded as pursuing the same occupation . . . may thus be divided into classes, and the classes may be taxed in different amounts and according to different standards. Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage. The considerations upon which such classifications shall be based are primarily within the discretion of the Legislature. The courts . . . can only interfere when it is [clear] that an attempted classification has no reasonable basis in the nature of the businesses classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. . . . (Emphasis added.)

Texas Co. v. Stephens, 103 S.W. 481, 485 (Tex. 1907). See also Dancetown, U.S.A., Inc. v. State, 439 S.W.2d 333 (Tex. 1969) and Fairmont Dallas Restaurants, Inc., v. McBeath, 618 S.W.2d 931 (Tex. Civ. App. - Waco 1981, no writ).

In Dancetown, supra, a taxpayer complained about a classification scheme in an occupation tax levied on certain amusement enterprises. The rate of tax differed based on the sort of amusement furnished. The taxpayer argued that

an "amusement" is an "amusement," and that there was no rational basis for varying the rate of tax by classifying, for example, the amusement provided by operas differently from that obtained from dance halls or animal contests. The court, after citing the language in Texas Co. v. Stephens, noted that:

> The members of each class into which the amusement business is now divided obviously differ from the members of every other class in their methods and places of operation and in the nature of the entertainment generally offered. Each class seems to embrace every enterprise that should reasonably be included in the same category. Since appellants have not demonstrated by proof or otherwise that 'there is no real difference to justify the separate treatment undertaken by the Legislature,' we cannot say on the present record that the classification is so arbitrary and unreasonable as to render the statutes unconstitutional.

439 S.W.2d 333, 337 (quoting Texas Co. v. Stephens, 103 S.W.2d 481, 485).

You have not suggested any reason why the classifications chosen by the legislature in this statute might be unreasonable, and we believe that rational explanations for the choices made by the legislature can be presumed. We conclude that a court would find that the legislature has divided the broad categories of lawyers into reasonably drawn classifications which distinguish between persons who do not in fact pursue the occupation of an attorney and those who do. See, e.g., State v. Pioneer Oil and Refining Co., 292 S.W. 869 (Tex. Comm'n App. 1927, judgment adopt'd).

Thus, a rational basis can be perceived for the classification schemes selected by the legislature here. First, lawyers who are in an inactive status under the statute governing the status of attorneys cannot engage in any activities in Texas which will constitute the occupation of being an attorney at law. Gov't Code, §§ 81.052-81.053. Thus, they are not even within the occupation group to which the tax applies, absent any question about classifications of that group. Second, it is not irrational to assume that lawyers over the age of 70, more often than not, do not actively engage in the practice of law, and it is reasonable to assume that in the main, attorneys in that classification are not in the same occupational circumstances as lawyers

whose careers are still in full blossom. <u>Texas Co. v. Stephens</u>, <u>supra</u>; <u>see also</u> <u>Kahn v. Shevin</u>, 416 U.S. 352 at note 2. <u>Compare</u> <u>Massachusetts Board of Retirement v. Murgia</u>, 427 U.S. 307 (1976) (legislative classification distinguishing the elderly from the non-elderly population for the purpose of conferring benefits and burdens has a rational basis and thus is permissible under the equal protection clause of the Constitution). Finally, the proration provision merely makes a rational temporal distinction between taxpayers who practice the <u>occupation</u> subject to the tax for an entire tax year (lawyers on active status under the statute governing the practice of law, <u>see</u> Government Code §§ 81.052-81.053) and taxpayers who may not lawfully practice the occupation at the beginning of the tax year, but who become eligible to carry on the occupation during the year.

Thus, the classifications cannot be said to be arbitrary, or without relation to the actual division of lawyers into those who carry on the occupation of attorney in Texas, and those who do not. <u>State v. Humble Pipe Line Co.</u>, 247 S.W. 1082 (Tex. 1923). Accordingly, the statute under consideration here is constitutional.

## S U M M A R Y

A classification scheme specified by the legislature, levying a temporary occupation tax on attorneys according to section 191 of the Tax Code, does not violate the "equal and uniform" rule of article VIII, section 2 of the Texas Constitution unless the classes devised by the legislature clearly appear to be arbitrary and without a reasonable basis.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Don Bustion
Assistant Attorney General